No. 32,620

Eva Lee Adams, as Administratrix of the Estate of D. D. Adams, Deceased (Ed Blieden, Trustee in Bankruptcy of S. R. Morgan, Intervener, *Appellee*), v. S. R. Morgan et al. (A. R. Jones, Loyd Jones, Josh Jones, The Osage Ice and Ice Cream Company, and H. Wade, Intervener, *Appellants*).

(52 P. 2d 643)

Opinion filed December 7, 1935.

*Bennett R. Wheeler, S. M. Brewster, John L. Hunt, Margaret McGurnaghan, John. H. Hunt, George M. Brewster, Allen Meyers, Ralph M. Hope,* all of Topeka, and *Edward H. Coulter,* of Little Rock, Ark., for the appellants.

*Charles Heizer, A. K. Stavely,* both of Lyndon, *Shields M. Goodwin,* of Little Rock, Ark., and *Arthur L. Adams,* of Jonesboro, Ark., for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This action originated as one to recover upon a money judgment. It has expanded, however, into one between two intervening petitioners for the possession and control of stock in a corporation and for the management and control of that corporation.

This action includes a money judgment obtained by plaintiff against appellant Morgan in the state of Arkansas for the sum of $28,476, a suit on that judgment in the district court of Osage county, attachment and garnishment proceedings by the original plaintiff in an attempt to collect her judgment, bankruptcy proceedings on the part of appellant Morgan, suit to determine title to stock in the Osage Ice and Ice Cream Company attached as the property of appellant Morgan, and suit by intervener trustee in bankruptcy of the estate of Morgan to obtain possession and control of the Morgan stock and to secure control and management of the Osage Ice and Ice Cream Company, a corporation, for the benefit of creditors of the estate of Morgan.

The validity of the money judgment against Morgan is not in dispute nor is it denied that he has paid nothing on the judgment. Numerous pleadings were filed by approximately ten parties. A summary of the pleadings would confuse rather than clarify the issues. Three hearings were had in the course of the entire case. The first occurred on January 25, the second on April 12, and the third on June 28, all in the year 1935.

The first hearing was on the motions of appellants Morgan and Wade to vacate the attachment of the stock. There was outstanding a total of 250 shares of stock in the Osage Ice and Ice Cream Company. The stock had been attached as the property of Morgan, the judgment debtor. Wade is a brother-in-law of Morgan. It was contended by Morgan and Wade that the 246 shares of stock attached were the property of Wade. The evidence in support of that contention consisted of depositions of Morgan and Wade taken at Little Rock, Ark., and oral testimony of five witnesses. The motions of Morgan and Wade were overruled. Morgan has not filed a motion for a new trial nor given notice of appeal. Wade did not file motion for new trial or notice of appeal until June 28, 1935.

On January 26, 1935, plaintiff filed an amendment to her petition alleging that the corporation was not indebted and had never paid any dividends and that Morgan had withdrawn for his own use all of the surplus of the company amounting to more than $17,000. Plaintiff asked that the company and A. R. Jones, vice-president and local manager, be made defendants. This was done. On the same day, pursuant to plaintiff's application, an injunction was issued restraining and prohibiting Morgan, Jones and the company from impairing the value of the property of the company, from removing its physical assets out of the jurisdiction of the court, from mortgaging, pledging or conveying property of the company other than in the ordinary course of business, and from paying over to Morgan or to his order any money then in its hands or thereafter received by it. A bond was executed and approved. The injunction order was served on defendants.

On February 11, 1935, Morgan filed a voluntary petition in bankruptcy in Arkansas, the state of his residence. The schedules showed debts totaling $1,252,200. They showed as his only assets 246 shares of the capital stock of the Osage Ice and Ice Cream Company. The schedules also showed that the certificate evidencing the ownership of these shares of stock was located in a lock box rented by the company at Osage City. Writs of garnishment had been served, including a writ on C. W. Johnson, receiver of the Osage County Bank, of Osage City. The receiver answered. It developed that the certificate in question, covering 246 shares of stock in favor of Morgan, was in the box of the Osage Ice and Ice Cream Company in the Osage County Bank.

On February 14, 1935, Morgan, Jones and the company filed separate motions to dismiss the action and later filed motions to stay proceedings for a period of twelve months on the ground that Morgan had been adjudicated a bankrupt. Both motions were overruled. No error is urged here concerning that ruling.

On April 12, 1935, Ed Blieden, one of the appellees, who had previously been elected and qualified as trustee in bankruptcy of the estate of Morgan, filed in the district court of Osage county, a petition for an order directing him, as trustee, to take charge of and assume control of Morgan's 246-share interest in the Osage Ice and Ice Cream Company, and, as the successor to Morgan's ownership of that interest, to run and operate the property for the benefit of the creditors of the estate of Morgan. This petition alleged, in

part, that the court had on January 25, 1935, overruled Morgan's and Wade's motions to discharge the attachment, and that they had not filed a motion for a new trial, and had taken no steps to perfect an appeal; that certificate number 61 for 246 shares was the property of Morgan, and that it had been so listed in Morgan's schedule in bankruptcy. Attached to the petition was a certified copy of an order of the referee in bankruptcy authorizing and directing the trustee to file this petition in the district court of Osage county.

The order of the referee contained findings that Morgan's schedule listed as his assets 246 shares of the capital stock of the Osage Ice and Ice Cream Company; Morgan was in truth and in fact the owner of those shares of stock on February 11, 1935, the day on which he filed his voluntary petition in bankruptcy and on which day he was adjudicated a bankrupt; Morgan is the owner of the *entire capital stock* and of all the property of the corporation, the other four shares of the capital stock having been issued to certain parties for no consideration; Morgan had treated the corporation and its property as his own since 1928; Morgan is indebted to the corporation in the sum of $17,000 on open account; Morgan, since he acquired the company in 1928, dominated and controlled it and its affairs and that he was still dominating and controlling them as if he were the sole owner of the corporation and its property, *as in fact he was,* on February 11, 1935; the stock constituted a valuable asset of Morgan's estate, and that *Ed Blieden as trustee is entitled to take charge of, operate and control the corporation and its affairs for the benefit of the creditors of the estate of Morgan;* the attachment of the stock by plaintiff constituted a voidable preference, having been obtained within four months of the filing of the voluntary petition in bankruptcy by Morgan.

Upon these findings by the referee the trustee in bankruptcy was by the referee *authorized, empowered and directed forthwith to take and assume control of the property and assets* of the Osage Ice and Ice Cream Company, *as the property of Morgan and to run and operate the property* for the benefit of creditors of Morgan's estate.

On this second hearing of April 12, 1935, of the intervening petition of the trustee in bankruptcy, oral testimony of four witnesses was introduced. The court granted the relief prayed for by the trustee and entered an order authorizing the trustee to take charge and assume control of the 246-share interest of Morgan in

the company and to run and operate the property of the company for the benefit of the creditors of the estate of Morgan.

On May 18, May 25 and June 28, all in 1935, the trustee filed intervening petitions against A. R. Jones, Josh Jones, Loyd Jones, John Birse and D. D. Panich. These petitions alleged in substance that these defendants were the record owners of one share each in the company, but that they did not in fact have any interest in the stock, that they had paid nothing for it and that they were merely the nominees of Morgan, who was the owner of these shares along with the other 246 shares, and that Morgan owned all 250 shares, and that he completely dominated and controlled the affairs of the company. Birse and Panich filed verified answers in which they stated in substance that they were merely the nominees of Morgan and that their certificates for one share each represented no interest in the corporation and were not held by them adversely to Morgan. The other defendants, the three Jones brothers, and the company, filed amended answers denying the allegation of the petition.

Although Wade's motion on January 25, 1935, to discharge the attachment, had been overruled, he took no action concerning the matter until June 28. His intervening petition alleged in substance the same averments as to the ownership of the 246 shares of stock as were contained in his motion of December 13, 1934, to vacate the attachment. The trustee answered denying the material allegations of Wade's petition. It will appear that now all of the parties claiming ownership of the total 250 shares of stock were properly before the court. Morgan was present and testified, but Wade did not appear. The case was finally submitted on Morgan's and Wade's depositions, which had previously been before the court, and on the oral testimony of Panich, Garner, Fausett and Birse, and on the oral testimony of Cummings and the three Jones brothers. The testimony of the last three witnesses was given at the hearing on April 12. The testimony of the Jones brothers as given on April 12 was offered by the trustee on June 28 in support of his petition. The three Jones brothers were present at the hearing of June 28, but did not take the witness stand. Appellants demurred to the evidence offered by the trustee. The demurrer was overruled. The court found generally in favor of the trustee and found specially that Morgan in fact owned the entire 250 shares. The certificates held by all the parties were ordered delivered to the trustee. The court

overruled appellants' motion to dissolve the injunction of January 26, 1935. Motions for new trial and notices of appeal were given by appellants.

On July 3, 1935, this court granted a stay of execution on the decree of June 28, upon the filing of a $5,000 bond. This was furnished July 8, and appellants then regained possession of the property of the company, pending this appeal.

Appellants' specifications of error may be grouped under two main contentions. The first is that the trial court erred in adjudging that Morgan was the owner of 250 shares of stock.

In this connection appellants complain about a hearing on the first intervening petition of the trustee on April 12. The complaint is that they were not given sufficient notice of this hearing. It appears the clerk notified counsel for appellants about one hour before the hearing. Appellants objected to the hearing for that reason. After argument concerning the question of notice, the court said:

"It seems to me that for three reasons the matter would be taken out from the general rule relating to notice in regard to motions, the first one being as far as Morgan himself, he is out of it, as between the trustee and him, *he has filed under oath a statement showing this property is his and by operation of law the trustee takes charge of it.* In the second place, as far as H. Wade is concerned, while it is true he still has time in which to appeal from the order made in January, adjudging this property does not belong to him, and until that is done, that is a final order to all intents and purposes, but the *chief reason is that it is merely a summary matter* which the *court in Arkansas has directed that he do* and for that reason as a motion to strike or make more certain, it would be a different matter. What is it you're asking for at this time?"

The trial court is not charged with prejudice and this court is convinced there was no intentional advantage taken of the parties by the trial court. Let us assume, however, that the court was entirely right in its analysis of the situation. Counsel is always entitled to reasonable notice of any hearing. There may be matters which counsel regard as vital to the protection of the interest of their clients. They may or they may not be vital. Irrespective of that fact counsel should be advised and given reasonable opportunity to prepare before they are called upon to be heard. It would have been prudent to have given longer notice. There was, however, a subsequent hearing, over two months later, on June 28, which concerned also the remaining four shares of stock. There had been a previous hearing to dissolve the attachment of the 246

shares, at which time depositions and oral evidence concerning ownership was offered at length. No showing is made here that longer notice could possibly have resulted in a different conclusion. Under all the circumstances we are not inclined to remand this case for retrial on the ground of insufficient notice for the one hearing on April 12.

It is next contended that the court erred in admission of testimony on June 28. Between April 12 and June 28, the record owners of the remaining four shares became parties defendant. Issues were also joined on the question of ownership of their shares. Two of the record owners filed answers admitting they were merely nominal owners and not owners in fact. The others joined issue on the · question of their ownership. Oral evidence had been offered at the hearing of April 12 concerning ownership of the four remaining shares. The record evidence of April 12 was introduced on June 28 in support of the trustee's petition concerning the ownership of these remaining shares. The owners of these shares were in court on June 28. They did not testify in their own behalf.

The precise issue was, who owned these shares of stock. The trustee alleged they did not. Their answers alleged they did. Their testimony of April 12 was an admission against interest. It was competent. (1 R. C. L. 469, 473; *Moore v. Brown & Co.,* 23 Kan. 269; *Smith v. Parry,* 9 Kan. App. 877, 61 Pac. 966.)

Appellants ask this court to review the weight and preponderance of evidence relative to the ownership of shares of stock. The request is made upon the theory that part of the evidence consisted of the depositions of Morgan and Wade. Appellants rely upon the case of *Moore v. Pye,* 10 Kan. 246. In that case the motion to set aside a sheriff's sale was supported by affidavits and the proceedings of the sheriff, all of which were in writing. There was no oral evidence. This court said it could weigh the evidence. In the instant case there was much oral testimony. No special findings were requested by appellants and the trial court found generally in favor of appellees on the question of ownership. There was substantial, competent evidence to sustain the findings and judgment of the trial court. This court does not weigh evidence. That is the province of the trial court.

Appellants' second contention is the court erred in transferring the management and control of the corporation to the trustee in bankruptcy of Morgan's estate.

In support of this contention it is urged there is a distinction between the stock of a corporation and its corporate entity. As an abstract statement, that is correct. Does it follow that a court can under no circumstances penetrate the theory of corporate entity in order to decree justice? In this case all the stock in the corporation in fact belonged to Morgan.

It is well settled that title and right to possession of all property owned and possessed by the bankrupt which prior to the filing of the petition he could have transferred or which might have been levied upon and sold under judicial process against him, vests by operation of law in the trustee as of the date of the person's adjudication in bankruptcy. (11 U. S. C. A., § 110, p. 277; *Wilson v. Atlantic & St. Lawrence R. Co.,* 2 Fed. 459; *In re Brantman,* 244 Fed. 101; *Isaacs v. Hobbs Tie & T. Co.,* 282 U. S. 734, 75 L. Ed. 645, 662; *In re Granite City Bank,* 137 Fed. 818.)

Not only did Morgan own all the stock, he was the sole directing spirit of the corporation. He determined its policies, he was its manager. He was in fact and in reality, for all practical purposes, the corporation. He testified:

"During 1933 and 1934, A. R. Jones and two of his brothers, John Birse and myself constituted the five directors of the corporation. As some justification for drawing on the corporation, I might say that *I supplied the management, directed the policies, furnished the engineering and accounting and sales policies, acted in an advisory capacity and handled the general management of the corporation.*"

In the case of *State, ex rel., v. Standard Oil Company,* 49 Ohio St. 137, 30 N. E. 279, 15 L. R. A. 145, 34 Am. St. Rep. 541, the court said:

"On a question of this kind, the fact must constantly be kept in view that the metaphysical entity has no thought or will of its own; that every act ascribed to it emanates from and is the act of the individuals personated by it; and that it can no more do an act, or refrain from doing it, contrary to the will of these natural persons than a house could be said to act independently of the will of its owner; and, where an act is ascribed to it, it must be understood to be the act of the persons associated as a corporation, and whether done in their capacity as corporators or as individuals must be determined by the nature and tendency of the acts." (p. 184.)

In Anderson on Limitations of Corporate Entity, page 80, the author says:

"The modern rule, supported by well-considered cases, fortified by reason, and sustained by logic, is that where an individual owns all, or even practically all of the stock of a corporation and controls its policies and operation, the

corporation and such individual are, in proper cases, and sufficient reason appearing therefor, regarded by the courts as one and the same." (See cases in footnote.)

At page 69 of the same text, the rule is stated thus:

"A corporation will be regarded as a legal entity, separate and distinct from its stockholders, unless such consideration is offered to defeat public convenience, justify wrong, protect fraud, or defend crime, in which case the corporation will be regarded as an association of persons only."

In the instant case the theory of corporate entity is asserted by Morgan purely as a shield to prevent the collection of debts from his insolvent estate. The defense of legal entity if permitted to prevail here would certainly justify wrong, if not in fact protect fraud. His plan is so plain, so obvious. His thought undoubtedly was that by bankruptcy he would purge himself of personal liability and the creditors could not reach the corporation because it was a sacred entity and untouchable.

Appellants cite the case of *Kellogg v. Douglas Co. Bank,* 58 Kan. 43, 48 Pac. 587. The principles of law announced there cannot possibly help Morgan here. There the bulk of the debtor's property was transferred to a corporation which he dominated and controlled. He owned substantially all the stock in the corporation. This court held that the corporation as an entity might be disregarded and the entire matter treated as a sham. It permitted the sale of the corporate property to satisfy the claims of the creditors of the stockholder. Whether a corporation is used to defeat claims of personal creditors by transferring property to the corporation, or whether the theory of corporate entity is asserted for the purpose of defeating creditors, is of no practical consequence. The only distinction is method. The effect on creditors is precisely the same. The result in the instant case is that creditors would get exactly nothing.

In the case of *Edward Finch Co. v. Rovie,* 12 F. 2d 360, 362, the court had occasion to discuss the subject of corporate entity in connection with a bankrupt's stock in the corporation. The court said:

"It is quite apparent that these were not such corporations as are depicted by Chief Justice Marshall in the famous Dartmouth College case as having the characteristics of immortality and individuality. They had neither. *The corporations and the bankrupt were one and the same.* (Italics inserted.) Their affairs were so intermingled and commingled that no individuality or corporate entity is discernible. It is doubtless true that legal forms were followed in their formation, and that they were technical paper corporations

under the laws of Minnesota, but we are satisfied they were nothing more than 'dummy' or fictitious corporations, never exercising any corporate functions.

"Courts do not hesitate to look through the shell of .corporate identity to get at the real purpose of the association of individuals. . . . The transfers of property were not intended to be out-and-out transfers with change of ownership, but were part of the arrangements for his control thereof through the instrumentality of the corporations."

The judgment of the district court was eminently correct, and it is affirmed.