**PASCHAL, Collector of Internal Revenue, v. BLIEDEN.**

No. 12157.

Circuit Court of Appeals, Eighth Circuit.

April 29, 1942.

400

Louise Foster, Sp. Asst. to the Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., J. Louis Monarch, Sp. Asst. to the Atty. Gen., and Samuel Rorex, U. S. Atty., and Gordon Frierson, Asst. U. S. Atty., both of Little Rock Ark., on the brief), for appellant.

D. D. Panich, of Little Rock, Ark. (Arthur L. Adams, of Jonesboro, Ark., on the brief), for appellee.

Before GARDNER, THOMAS, and RIDDICK, Circuit Judges.

THOMAS, Circuit Judge.

S. R. Morgan was adjudged a bankrupt by the district court on February 11, 1935, and thereafter Ed Blieden, the appellee, qualified as trustee of the bankrupt estate. Morgan's business operations extended throughout the state of Arkansas and into parts of Kansas and Oklahoma. Some of his business was transacted in his own name and part of it through personally owned corporations. When he was adjudged bankrupt he surrendered to his trustee property operated in his own name but concealed his ownership of the corporations and continued to operate them until through legal proceedings the assets of such corporations were by proper court orders turned over to the trustee. Among the corporations so owned, and concealed and operated by Morgan after he was adjudicated bankrupt, and the only corporations involved in this proceeding, were the Osage Ice and Ice Cream Company of Osage, Kansas, the Pine Bluff Cold Storage Company of Pine Bluff, Arkansas, and the Independent Refrigerated Products Company of Stuttgart, Arkansas. The trustee obtained possession of the property of the Osage Company sometime after December 7, 1935, and of the properties of the Pine Bluff and Independent companies on July 9, 1936. See Adams v. Morgan, 142 Kan. 865, 52 P.2d 643.

For sometime prior to his bankruptcy Morgan either did not make, or made incomplete, federal tax returns. Acting under the authority of § 3176 of the Revised Statutes as amended by the Revenue Act of 1926, c. 27, 44 Stat., Part 2, p. 112, § 1103, 26 U.S.C.A.Int.Rev.Code, § 3612, the Collector of Internal Revenue made returns and amended returns for Morgan and for the corporations. The pertinent part of the statute under which the collector acted reads:

"If any person, corporation, company, or association fails to make and file a return or list at the time prescribed by law or by regulation made under authority of law, or makes, willfully or otherwise, a false or fraudulent return or list, the collector or deputy collector shall make the return or list from his own knowledge and from such information as he can obtain through testimony or otherwise.

"In any such case the Commissioner of Internal Revenue may, from his own knowledge and from such information as he can obtain through testimony or otherwise, make a return or amend any return made by a collector or deputy collector.

"Any return or list so made and subscribed by the Commissioner, or by a collector or deputy collector and approved by the Commissioner, shall be prima facie good and sufficient for all legal purposes."

Based upon the information obtained by the collector, his deputies and revenue agents, and upon assessments made by the Commissioner, the collector, appellant, between April 16, 1935, and August 4, 1937, filed claims and amended claims for taxes assessed against Morgan and the three corporations named supra with the referee and the trustee, aggregating $11,270.46. On February 14, 1938, all these claims were consolidated in a verified claim and filed with the trustee. On August 26, 1937, the trustee filed exceptions to one of the original claims against the Independent Refrigerated Products Company for $34.51. We are informed in appellee's brief that these exceptions stand to the consolidated claim.

A hearing was had on the trustee's exceptions on October 10, 1939. The consolidated claim covered many items for income taxes, documentary stamp taxes, capital stock taxes, excess profits taxes, interest and penalties. By reason of abatements and credits the claim was reduced at the hearing to the sum of $5,532.97. This total includes:

| | |
|---|---|
| Income tax for 1932 of Morgan individually, | $2,002.20 |
| Interest, | 258.32 |
| Income tax for 1934 of Osage Ice and Ice Cream Company, | 365.91 |
| Interest, | 37.31 |
| Income, capital stock and excess profits taxes for 1935 and 1936 of Pine Bluff Cold Storage Company, | 2,089.60 |
| Taxes of Independent Refrigerated Products Company for 1934, 1935 and 1936, | 779.63 |

It was the claim of the collector that the trustee was liable directly for the taxes assessed against Morgan individually and as transferee for the taxes assessed against the corporations.

Subsequent to the hearing the referee entered an order "that said claims be and they are hereby disallowed and expunged from the record." This order was based upon the finding, stated in the order, "that there is insufficient evidence to justify the allowance of the claims in any amount and that they should be disallowed."

Upon petition for review the court entered an order adopting the findings of fact and declarations of law made by the referee and approving and confirming the order disallowing and expunging the claims. From this order the collector appeals. In the referee's certificate to the court accompanying his copy of the record for review the referee included detailed findings of fact and conclusions of law.

From the findings and order and the assignment of errors two questions emerge for determination on this appeal. They are:

1. Did the collector sustain the burden of properly proving the claims for taxes in the hearing before the referee?

2. Is the trustee liable as a transferee under § 311 of the Revenue Acts of 1934 and 1936, 26 U.S.C.A.Int.Rev.Code, § 311, for taxes which had accrued against the Morgan corporations prior to the time that the trustee took them over pursuant to the orders of the courts, or on any basis?

At the hearing before the referee upon the trustee's exceptions to the claims the collector, through one Severson, a revenue agent, introduced photostatic copies of the assessment lists of the Commissioner of Internal Revenue upon which the claims are based. It is stipulated that these assessments "were official and in regular form, and had been made by the Commissioner of Internal Revenue, and were for the amounts stated by the said witness [Severson]." The certificate of the Commissioner on each assessment list reads:

"I hereby certify that I have made inquiries, determinations and assessments of taxes, penalties, etc., of the above classification specified in these lists, and find that the amounts of taxes, penalties, etc., stated as corrected and as specified in the supplementary pages of this list made by me are due from the individuals, firms, and corporations opposite whose names such amounts are placed, and that the amount chargeable to the collector is as above."

Severson testified that the determinations and assessments were based upon inquiries made by deputy collectors and revenue agents. Such inquiries included examination of books of account of the taxpayers, interviews and consultations with Morgan and others and testimony taken in court in other proceedings involving the Morgan estate. At the conclusion of Severson's testimony the appellant rested.

The important contentions of the parties relate to the question of burden of proof. The collector contends that the verified claims and the certified assessment lists make a prima facie case for the claimant, and that the burden of proof rests upon the taxpayer, or his trustee in bankruptcy, to show the incorrectness of the claim. The appellee contends, and the referee and court held, that the appellant cannot rely upon the verified claim and the assessment to establish a prima facie case; that he must go further and show the consideration for the claim; that he must show as to an income tax from what operation the income was derived or from what source it was received; and that the amendment of the claims destroyed their prima facie effect.

██ That the referee and the trustee misconceived the law controlling the burden of proof is clear. Section 3612(c) of the statute, supra, provides that the assessment lists of the Commissioner "shall be prima facie good and sufficient for all legal purposes." In Western Express Co. v. United States, 8 Cir., 141 F. 28, 30, this court said that the assessment of a tax by the revenue officers is presumptively correct, "and their action stands as prima facie correct until this presumption, by countervailing proof, is met and overthrown by the party assessed." In Willcuts v. Minnesota Tribune Co., 8 Cir., 103 F.2d 947, 951, it was said, "The assessment of the Commissioner of Internal Revenue is * * * presumptively correct. The burden of proof was on the taxpayer to overcome this presumption * * *." See, also, Public Opinion Pub. Co. v. Jensen, 8 Cir., 76 F.2d 494; United States v. Bernstein, 8 Cir., 16 F.2d 233; In re Lang Body Co., 6 Cir., 92 F.2d 338; Fiori v. Rothensies, 3 Cir., 99 F.2d 922; United States v. Rindskopf, 105 U.S. 418, 26 L.Ed. 1131; Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212. As to the prima facie

effect of a verified claim in bankruptcy generally, see Whitney v. Dresser, 200 U.S. 532, 534, 535, 26 S.Ct. 316, 50 L.Ed. 584. The referee's holding that to establish a claim in bankruptcy for taxes the government must prove consideration for the taxes is confusing. The tax assessment is consideration for the claim; and when an admittedly regular assessment list is offered in evidence, the burden of proof to establish a prima facie case is satisfied. The burden then rests upon the objecting taxpayer to show the incorrectness of the assessment.

■ The further contention that the several amendments to the claims and the abatement of the penalties destroyed the verity of the claims is without merit. The same presumption of verity follows the amendments that attached to the original assessments. Section 3176 of the statute supra gives to amended assessments the same status as that of an original assessment. The trustee was not prejudiced by any of the amendments, nor the abatements and credits allowed. He is in no position to complain.

■ The referee and the court erred in holding that the claimant failed to sustain the burden required to establish prima facie the validity of his claim.

The trustee further contends that the evidence was conflicting and that therefore the findings of the referee are conclusive. This contention could not possibly have any application to the taxes assessed against Morgan individually; and, when the record is considered as a whole, it is without merit as to the taxes assessed against the corporations. We shall review the evidence as to the corporations briefly.

■■ The transferee assessment against the trustee for the Osage Ice and Ice Cream Company was for 1934 income tax, $365.91; for interest, $37.31; and for penalty, $91.48, making a total of $494.70. The penalty was abated leaving a claim for $403.22. There is no claim that there is conflicting testimony in the record in reference to the basis of the assessment against this corporation. The alleged conflict in the evidence relates to the claims based upon assessments against the Pine Bluff Cold Storage Company and the Independent Refrigerated Products Company.

The original claim filed against the Pine Bluff Cold Storage Company for all taxes was in the amount of $4,904.97, of which $4,788.54 was for income and excess profits taxes and penalties and $116.43 was for capital stock and documentary stamp taxes, penalties and interest. The income and excess profits taxes were afterwards reduced by abatements and corrections to $1,990.67 and the capital stock and documentary taxes to $98.93, making the total claim as amended $2,089.60. We find no evidence showing the claim as thus amended to be incorrect. The trustee took over the plant on July 9, 1936, and operated it until the end of December of the same year. As a witness he testified that he guessed that the plant made a profit during that period of $5,000 or $6,000. His total receipts were $8,870.70 and his disbursements $8,843.44 with no showing of the items entering into these figures. He was then asked, "From the experience you acquired from the ice business and the experience you had from the operation of Pine Bluff Cold Storage Company would you say that the Morgans were able to do any better in 1935 than you were able to do in 1936?" Over objection he answered, "I don't think so." Clearly this testimony of the trustee does not create a conflict in the evidence upon any fact in issue. It does not impeach the assessment based upon the careful investigation of the collector and his deputies; and it furnishes no basis for the finding that the assessment as amended was incorrect. The amendments made by the collector cannot be used to prove that the taxes claimed are incorrect. Roche v. Commissioner, 5 Cir., 63 F.2d 623.

The total assessment against the Independent Refrigerated Products Company was in the amount of $959.58. It was reduced by abatement to $779.63. The assessment was based upon a delinquent return prepared by a deputy collector of internal revenue after making an investigation pursuant to § 3176 of the statute, supra. The tax was for the years 1934 and 1935 and a penalty for 1936 which was abated. The company operated an ice plant at Stuttgart, Arkansas, and the deputy collector's return showed that in the original return he estimated income on the daily capacity of the plant of nine tons, or average sales of eight tons, on an operation of one hundred days. The selling price of the ice was computed at $5 per ton. The information upon which the return was based was obtained from testimony taken at a hearing in Little Rock and an independent investigation made at Stuttgart.

It is claimed that the basis of the assessment is refuted by the testimony of the trustee and one Mike McCuing. The trustee's testimony makes no reference to the operation of the plant during the period covered by the assessment. He took possession July 9, 1936, but never operated the business. His testimony conflicts in no degree with any material fact shown by the return upon which the amended assessment was made.

Mike McCuing testified that during 1935 he lived at Stuttgart and was attorney for one Moll, the owner and lessor of the property occupied by the ice plant. He observed that the plant operated only about one-third or one-half the time and that the company obtained ice when the plant was not in operation to supply its customers from Pine Bluff; that one of his clients, a peddler, told him that he bought ice as low as $2 a ton; that there was an ice war in Stuttgart early in 1935 and that during its continuance the price of ice was reduced substantially; and, finally, that his client had obtained a judgment for damages against the corporation for over $900.

Assuming the truth of McCuing's testimony, his indefinite and hearsay statements fall far short of refuting or even conflicting with the facts disclosed in the return upon which the assessment was based. The collector's investigations disclosed that the plant was operated one hundred days and produced and sold an average of eight tons of ice daily. This is not inconsistent with McCuing's estimate that the plant was operated only about one-half the time, nor that ice was obtained for a part of the time from the plant at Pine Bluff. Particularly, this fails to show any fact bearing upon the income from operations of the corporation. Neither does the fact that a peddler told the witness that he had bought some ice for $2 a ton impeach the basis of the assessment. The collector found that the plant had a daily capacity of nine tons and that the corporation realized $5 a ton on an average of eight tons per day. Such evidence as the trustee produced does not rise to the dignity of conflicting evidence, and it does not amount to a sound basis for a mere conjecture that the tax is incorrect.

It should be noted that the findings upon which the orders of the referee and the court expunging the claim are based do not seem to be predicated upon the testimony claimed to be in conflict with facts contained in the returns made by the collector, but the orders appear to be founded upon the erroneous view that the assessments are not presumptively correct and that as evidence they do not satisfy the burden of proof cast upon the collector.

The question of the liability for the taxes imposed upon the three corporations relates to taxes accruing during a period beginning prior to the date on which Morgan was adjudicated a bankrupt on February 11, 1935, and the date on which by order of court the corporations were turned over to the trustee as part of the assets of the bankrupt, which, as to the Osage Ice and Ice Cream Company, occurred some time after December 7, 1935, and on July 9, 1936, as to the other two corporations.

The appellant contends that the trustee is liable as transferee under § 311 of the Revenue Act of 1934, c. 277, 48 Stat. 680, 26 U.S.C.A. Int.Rev.Code, § 311, or as an expense of administering the bankrupt estate.

The referee and the court found that these taxes should be eliminated from the claim because:

"1. They represent arbitrary assessments, not based upon any actual income tax earned or excess profits earned.

"2. Those properties did not represent legal corporations.

"3. Any income which S. R. Morgan derived from the operation of those properties subsequent to February 11, 1935, the date of bankruptcy, represent after-acquired income, and is not a provable debt in bankruptcy."

To these findings the trustee adds the further contentions (1) that the trustee did not recover the corporations but only their assets; and (2) that there is no evidence that the income or benefits from the operation of the corporations for the period passed to the trustee.

It is conceded that the assets of all these corporations were turned over to the trustee, and it was stipulated that the property of the Pine Bluff Cold Storage Company was sold for $30,105, and that of the Independent Refrigerated Products Company for $2,760.

Section 311 of the Revenue Act of 1934, supra, makes the "transferee of property of a taxpayer" liable for taxes imposed upon the taxpayer. A transferee, like

any other taxpayer resisting payment of a tax, has the burden of showing that the taxes claimed are incorrect. Roche v. Commissioner, supra. The first finding of the referee and of the court that the taxes are wrong because they represent arbitrary assessments is based upon an erroneous view of the law. The assessments were based upon returns and amended returns made by the collector under R.S. 3176, supra, "from such information as he can [could] obtain." The burden was upon the trustee to prove that it was wrong. Until such proof was produced the assessment cannot be held to be arbitrary.

■■ The second finding that "those properties did not represent legal corporations", is immaterial. The alleged corporations were operated under corporate names and their "property" was turned over to the trustee. The tax was assessed against the trustee as a transferee. It does not matter whether the transferor was correctly named or not. Substance and not form controls in applying tax laws.

■ The third finding is also without merit. It is based upon an erroneous view of the incidence of the tax. The property was not transferred to the trustee until after July 9, 1936, and was received by the trustee burdened in equity with the taxes of 1934 and 1935. Under the statute and in equity the government may follow the property into the trustee's hands and collect the tax.

■■ The further contentions of the trustee are equally without merit. The law burdens all of a taxpayer's property with liability for every form of tax imposed upon him. The government is not required to collect income taxes exclusively from the income by which such taxes are measured, nor excess profits taxes from excess profits. The taxpayer's liability extends to all of his property. There is accordingly no significance to be attached to the alleged fact that the trustee took over only the assets of the corporations and not the corporate organizations, nor to the want of evidence to show that the income of the corporations for the periods covered by the taxes passed to the trustee.

The order appealed from is reversed and the case is remanded with instructions to enter an order allowing the amended claim of the appellant.