313 F.2d 73
 Lucille FULLER, Petitioner,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent (two cases).
ESTATE of Charles WILLIS, Deceased, Mrs. Lucille Fuller, Executrix, Petitioner,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
 No. 14859.
 United States Court of Appeals Sixth Circuit.
 February 5, 1963.
 
 John Kennedy Lynch, Cleveland, Ohio, for petitioners.
 Alan D. Pekelner, Atty., Dept. of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, I. Henry Kutz, Attys., Dept. of Justice, Washington, D. C., on brief), for respondent.
 Before MILLER and WEICK, Circuit Judges, and WILLIAM E. MILLER, District Judge.
 WEICK, Circuit Judge.
 
 
 1
 This review involves the validity of determinations of income tax deficiencies and fraud penalties made by the Commissioner against the estate of Charles Willis, deceased, for the tax years 1949 to 1954 inclusive and the liability of his sister, Lucille Fuller, as transferee of his assets.
 
 
 2
 The case was submitted to the Tax Court on stipulations, testimony of witnesses, exhibits and briefs. The court in a Memorandum Findings of Fact and Opinion upheld determinations made by the Commissioner.
 
 
 3
 It was the claim of petitioners that the income tax deficiencies were barred by the statute of limitations. This statute would not be a bar, however, if decedent filed false and fraudulent returns for the years in question with intent to evade the tax. 26 U.S.C. § 276(a) (1939 Int.Rev.Code); 26 U.S.C. § 6501(c) (1) and (2) (1954 Int.Rev.Code); Howell v. Commissioner, 175 F.2d 240 (C.A.6). The burden of proof was upon the Commissioner to establish fraud by clear and convincing evidence. Drieborg v. Commissioner, 225 F.2d 216 (C.A.6).
 
 
 4
 To sustain this burden, the Commissioner offered proof in the Tax Court that in each of the years specific items of income were omitted from the returns. These included dividends on stock in each of the years which were credited to him in his account with the broker, rental income in three of the years and capital gains in all of the years except 1951. In 1954 capital gains of $9,811.92 arising from the sale of stock were omitted. We think the Tax Court was justified in finding that Willis knew that these dividends were credited to him and were subject to taxation. The notices sent to him by the broker so indicated. Willis had sufficient intelligence to buy and sell stocks and to read the stock market news in New York newspapers which he usually purchased on Sundays.
 
 
 5
 In addition to the omission of these specific items of income from the returns there were other indicia of fraud. Mr. Willis, who was a police officer in Youngstown, had a safe deposit box in Mahoning National Bank under the name of Charles Sanford. He had a brokerage account with Butler, Wick & Co. under the same assumed name. He bought and sold securities in this account. All of the shares in this account were held by the brokers for the account of Charles Sanford, except 400 shares of stock of Aetna Standard Engineering Company which were registered in decedent's name. He closed his safe deposit box on October 19, 1955 and on the same day purchased with cash a New York draft payable to Charles Sanford in the amount of $60,000. He deposited the draft in a savings account in a Cleveland bank. A few days before his death he withdrew the funds from his savings account, purchased another draft and endorsed it over to his sister, Lucille Fuller, who deposited it in her savings account. The Commissioner made a jeopardy assessment in order to tie up these funds.
 
 
 6
 The Tax Court found that the Commissioner had shown fraud by the consistent and consecutive omissions of income from the tax returns and by the other circumstances in the case. Drieborg v. Commissioner, supra; Kurnick v. Commissioner, 232 F.2d 678 (C.A.6). Our review of the evidence has failed to convince us that this finding is clearly erroneous and we are, therefore, bound by it. Commissioner v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218; Kurnick v. Commissioner, supra.
 
 
 7
 This leaves for our consideration only the question of the propriety of the deficiency determined by the Commissioner. The Tax Court treated this issue with the following language:
 
 
 8
 "Once the issue of the statute of limitations has been eliminated, the burden of proving error in the deficiency, and particularly in its amount, rests upon petitioners. No convincing evidence as to error in any specific item has been produced.
 
 
 9
 "As to the year 1955, for which the burden is entirely upon decedent's estate, the deficiency must also be sustained as determined."
 
 
 10
 We agree that the burden of proof with respect to this issue was on the taxpayers. Bryan v. Commissioner, 209 F.2d 822, 825 (C.A.5).
 
 
 11
 We find no fault with the deficiencies and penalties based on failure to include in the returns the specific items of dividends, rents and capital gains. These items were sustained by the evidence.
 
 
 12
 Petitioners complain about the determination of "other income" in the amount of $30,160.45 which the Commissioner calculated by the following analysis of the source of funds for the bank draft in the amount of $60,000:
 
 
 13
 Cashier's check .................................. $60,000.00
 Less: Identified source of funds
 Stocks sold before 10/19/55 and on hand
 on 1/1/49 ................................ $12,046.66
 Net gain of stocks purchased and sold
 during period ............................ 2,465.32
 Veteran's pension 5/20/30 — 10/19/55 ... 4,198.96
 Dividends received 1/1/49 — 10/19/55 ... 4,701.02
 Net rental income ............................ 7,196.53
 __________
 Total ................................. $30,608.49
 Add: Estimated savings from salary ........... $ 1,840.41
 __________
 Total cash accounted for ..................... 32,448.90
 Less: Application of funds (stock purchased) . 2,609.35
 __________
 $29,839.55
 __________
 Cash unaccounted for and to be allocated
 as other income ......................... $30,160.45

 Allocation of $30,160.45

 1949 2/13 of $30,160.45 $ 4,640.07
 1950 2/13 of 30,160.45 4,640.07
 1951 2/13 of 30,160.45 4,640.07
 1952 2/13 of 30,160.45 4,640.07
 1953 2/13 of 30,160.45 4,640.07
 1954 2/13 of 30,160.45 4,640.07
 1955 1/13 of 30,160.45 2,320.03
 __________
 $30,160.45
 
 
 14
 The decedent did not keep any books and records to reflect his income from activities other than his salary as a policeman. The Commissioner of necessity had to resort to other sources of evidence available to him. He was within his rights in doing so and his calculations must be sustained unless they appear to be arbitrary and unreasonable. Schira v. Commissioner, 240 F. 2d 672 (C.A.6); Doll v. Glenn, 231 F.2d 186 (C.A.6).
 
 
 15
 The Tax Court stated in its opinion "The issues are: (1) Whether respondent correctly determined decedent's income by specific adjustments and a net worth computation; * * *." The court cited Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 which was a net worth criminal case.
 
 
 16
 It would appear from the Commissioner's analysis above set forth that he took the amount of cash on hand at the end of the taxable period and worked backward to the beginning allocating 1/13th of the total for 1955 and 2/13ths for each of the years from 1954 back to 1949. No net worth statement other than the Commissioner's analysis was offered in evidence. There was no determination by the Commissioner or findings of fact by the Tax Court as to the amount of cash on hand at the beginning of each tax year.
 
 
 17
 The Supreme Court held that in order to justify the use of net worth computations the beginning period must be established with reasonable certainty. Holland v. United States, supra.
 
 
 18
 The fact that this is a civil rather than a criminal action and that there is a difference in the burden of proof does not make the determination of the opening net worth any less vital to the validity of the method of computation. Thomas v. Commissioner, 223 F.2d 83, 89 (C.A.6) and 266 F.2d 297 (C.A.6); Fairchild v. United States, 240 F.2d 944, 948 (C.A.5).
 
 
 19
 In Phillips' Estate v. Commissioner, 246 F.2d 209 (C.A.5), the Tax Court took the cash figure on closing and considered it also as the opening amount since the taxpayer did not prove that there was any change. In reversing the decision the Court of Appeals said:
 
 
 20
 "Without this essential ingredient in the opening net worth statement it is really not a net worth case at all. There must be a beginning and an end and the creature cannot survive if headless for `the application of the cash expenditure method * * * with neither a head nor a tail to it will not do', Olinger v. Commissioner, 5 Cir., 234 F.2d 823, 824."
 
 
 21
 In Phillips, as here, the taxpayer was dead and could not testify. This fact was referred to in Merritt v. Commissioner, 301 F.2d 484, 486 (C.A.5) which distinguished Phillips.
 
 
 22
 The Commissioner gave no credit for cash on hand on January 1, 1949. It seems improbable to us from the evidence in this case that Willis accumulated no cash until the last few years of his life.
 
 
 23
 There was not an iota of evidence in the record to support the determination that Willis had cash income not reported in the amount of $4,640.07 in each of the years from 1949 through 1954 and $2,320.03 in 1955. The allocation of cash was therefore arbitrary.
 
 
 24
 Since error has appeared in the Commissioner's determination, the presumption of validity no longer applies. Weir v. Commissioner, 283 F.2d 675, 682 (C.A.6).
 
 
 25
 The liability of the transferee was contested on the ground that the transferer was not liable for the deficiencies. Since we have found the transferor's estate liable it would follow that the transferee is liable to the same extent. The transfer was without consideration and left the estate without funds to pay the tax.
 
 
 26
 The decisions of the Tax Court are affirmed except as modified herein and the cases are remanded for further proceedings with respect only to the issue of the income tax and penalty on "other income," that is, on income other than the specific items heretofore referred to which we have approved.