**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Joseph G. LEASE, Defendant-Appellant.**

**No. 273, Docket 28879.**

United States Court of Appeals
Second Circuit.

Argued March 1, 1965.

Decided June 9, 1965.

Thomas H. Baer, Asst. U. S. Atty. (Robert M. Morgenthau, U. S. Atty. for Southern Dist. of New York, David E. Montgomery, Asst. U. S. Atty., on the brief), for appellee.

Robert Polstein, New York City (Jerome R. Halperin, New York City, of counsel), for appellant.

Before MOORE, KAUFMAN and HAYS, Circuit Judges.

MOORE, Circuit Judge.

After investigation in 1945 and 1946 into the fiscal affairs of Joseph G. Lease, the Internal Revenue Service advised Lease that it had determined a tax deficiency for 1943 and 1944, with penalties (1) for fraud in each year and (2) for failing to file a return for 1944. After consultation with IRS in 1949 Lease consented to the assessment of a deficiency against him for those years. Ac-

cordingly, assessments were made, which by Int.Rev.Code of 1939 § 3670 (now Int.Rev.Code of 1954 § 6321) gave rise to a lien on all of Lease's property and rights to property. Lease neither paid the amounts due and sought a refund in the district court, nor petitioned for Tax Court review of the deficiency. He admits that his "net worth is in excess of $500,000," but the Government was able to collect only about $6,000 by distraint; most of his assets are outside the United States. This action was brought in 1962 to foreclose the tax lien and to collect a judgment of $120,000 including interest.[1] Lease contended that the Commissioner's assessments were erroneous and that there was neither fraud nor failure to file. After a trial before Judge Levet and a jury, a special verdict was rendered finding Lease liable for fraud and failure to file, but also finding the assessment partially erroneous. Consequently, a verdict for only $32,462 was rendered against Lease. Lease made the usual post-trial motions, which were denied by Judge Levet, and he now appeals.

■ There is no longer any doubt in this circuit that in an action to enforce a lien the taxpayer may challenge the underlying merits of the assessment. See Falik v. United States, 343 F.2d 38, 40 (2d Cir. 1965); United States v. O'Connor, 291 F.2d 520, 526–28 (2d Cir. 1961).

The same certainty does not exist as to how strong an attack on the correctness must be to carry the day. Lease does not quarrel with the well established rule that "the assessment of the Commissioner * * * was only *prima facie* evidence of the amount due as taxes * * * It establishes a *prima facie* case of liability * * * and nothing more. If not impeached, it was sufficient to justify a recovery * * *" United States v. Rindskopf, 105 U.S. 418, 422, 26 L.Ed. 1131 (1881). Lease does, however, take issue with the operation of this "presumption" of correctness under Judge Levet's charge. The Government contends, on the other hand, not only that the "assessments received in evidence constituted the Government's *prima facie* case" but also that they "placed upon Lease the burden of proving the assessments wrong."

■ Our initial question, therefore, concerns the proper allocation or placement of the burden of coming forward and the burden of persuasion as to the correctness of a tax assessment. Oddly enough, the matter has not been given satisfactory airing. In Rindskopf itself the Court did not discuss it, being more concerned with an erroneous charge that the assessment must stand or fall in its entirety.[2] Subsequent Supreme Court cases have not spoken to the point.[3] And most of the pertinent cases we have found

1. By an instrument executed in 1958, the statute of limitations was extended to December 31, 1962. The complaint also named stakeholder defendants who held property to which the liens being foreclosed had attached. Application for a preliminary injunction restraining transfer of Lease's assets by the stakeholders was withdrawn and the action against them discontinued when they placed the property in escrow pending the outcome of this action.

2. Had it considered the issue it would probably at that time have put its answer in terms of burden of proof, rather than burden of coming forward and burden of persuasion. We realize that in reversing on other grounds the Court regarded as correctly presenting the law a charge quite similar to the one before us; however, we see even more substan-

tial grounds for reaching the same conclusion than that cursory approval.

3. Thus, Wickwire v. Reincke, 275 U.S. 101, 105, 48 S.Ct. 43, 72 L.Ed. 184 (1927), held only that proof of the estate tax assessment was insufficient to keep an estate that had introduced considerable evidence from getting to the jury. By statute the burden of proof there was specifically on the estate. Welch v. Helvering, 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933), said only that the Commissioner's ruling that taxpayer's expenses were capital and not ordinary and necessary "has the support of a presumption of correctness, and the petitioner has the burden of proving it to be wrong." It is stated in Helvering v. Taylor, 293 U.S. 507, 514, 55 S.Ct. 287, 290, 79 L.Ed. 623 (1935), that in "an action to recover taxes paid * * *

tend merely to state without discussion that: the assessment establishes a *prima facie* case or is *prima facie* correct;[4] the taxpayer must overcome the presumption of correctness;[5] the taxpayer must show, demonstrate or establish the assessment to be erroneous;[6] or, the taxpayer has the burden of proving the assessment incorrect.[7] How much the taxpayer must "show" or the weight of the "burden" that must be carried is not adequately answered.[8] Some cases seem to suggest that while the Government's proof of the assessment establishes a *prima facie* case, thereby shifting to the taxpayer the burden of coming forward with evidence tending to undermine the assessment, the burden of persuasion as to the overall correctness of the assessment is always on the Government. See

United States v. Szerlip, 169 F.Supp. 529, 531 (E.D.N.Y.1959) (alternative holding); cf. United States v. Molitor, 337 F.2d 917, 922–23 (9th Cir. 1964). In Szerlip Judge Zavatt had been sufficiently persuaded by the taxpayer's case showing the assessment to be erroneous that he granted judgment for the taxpayer when the Government failed to prove anything beyond the assessment. In Molitor the taxpayer[9] had sued for a refund of certain amounts already collected on his Social Security and income tax withholding liability. The Government counterclaimed for the unpaid balance of the assessment. Both complaints were dismissed for failure of the respective claimants to meet their burdens of proof. On the Government's appeal from the dismissal of its counterclaim, the court there

the burden was on the plaintiff, in order to establish a basis for a judgment in his favor. * * * For like reason the burden is upon the taxpayer to establish the amount of a deduction claimed." But the case held only that the taxpayer need not prove the correct amount of the tax in order to prove the Commissioner's determination erroneous. Compare Whitney v. Dresser, 200 U.S. 532, 534, 26 S. Ct. 316, 50 L.Ed. 584 (1906); 3 Collier, Bankruptcy ¶57.13, at 209 (Moore 14th ed. 1964).

4. See, e.g., Bowers v. American Sur. Co., 30 F.2d 244, 245 (2d Cir.), cert. denied, 279 U.S. 865, 49 S.Ct. 480, 73 L.Ed. 1003 (1929) (collection); Plisco v. United States, 111 U.S.App.D.C. 177, 306 F.2d 784, 786 (D.C.Cir.1962), cert. denied, 371 U.S. 948, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963) (same); cf. Austin Co. v. Commissioner of Internal Revenue, 35 F.2d 910, 912 (6th Cir. 1929), cert. denied, 281 U.S. 735, 50 S.Ct. 249, 74 L.Ed. 1150 (1930) (deficiency); Jones v. Commissioner of Internal Revenue, 39 F.2d 550, 552 (7th Cir. 1930) (same); Public Opinion Publishing Co. v. Jensen, 76 F.2d 494, 495 (8th Cir. 1935) (refund). See also Paschal v. Blieden, 127 F.2d 398, 401 (8th Cir. 1942) (bankruptcy).

5. See, e.g., Becker v. United States, 21 F. 2d 1003, 1004 (5th Cir. 1927) (collection); Crook v. United States, 30 F.2d 917, 918 (5th Cir. 1929) (same); United States v. Strebler, 313 F.2d 402, 403–04 (8th Cir. 1963) (same); cf. Public Opinion Publishing Co. v. Jensen, supra

(refund). See also Paschal v. Blieden, supra (bankruptcy).

6. See, e.g., Plisco v. United States, supra (collection); Price v. United States, 335 F.2d 671, 677–78 (5th Cir. 1964) (same); cf. Goldberg v. Commissioner of Internal Revenue, 239 F.2d 316, 319 (5th Cir. 1956) (deficiency); Fuller v. Commissioner of Internal Revenue, 313 F.2d 73, 75–76 (6th Cir. 1963) (same); Veino v. Fahs, 257 F.2d 364, 367 (5th Cir. 1958) (refund). See also Paschal v. Blieden, supra (bankruptcy).

7. See, e.g., Becker v. United States, supra (collection); cf. Austin v. Commissioner of Internal Revenue, supra (deficiency); Jones v. Commissioner of Internal Revenue, supra (same); Anderson v. Commissioner of Internal Revenue, 250 F.2d 242, 249 (5th Cir. 1957), cert. denied, 356 U.S. 950, 78 S.Ct. 915, 2 L.Ed.2d 844 (1958) (same). See also Paschal v. Blieden, supra (bankruptcy).

8. In attacking state tax assessments as unconstitutional, the taxpayer must show the assessment to be arbitrary by "clear and convincing evidence." In re Lang Body Co., 92 F.2d 338, 341 (6th Cir. 1937), cert. denied sub nom. Hipp v. Boyle, 303 U.S. 637, 58 S.Ct. 522, 82 L.Ed. 1097 (1938).

9. Molitor was actually not the taxpayer, but the employer. However, his liability for the statutory penalty, see Int.Rev. Code of 1954 § 6672, is treated like the liability of a taxpayer. See 337 F.2d at 924.

apparently thought the rule to be that the taxpayer must "come forward with sufficient evidence to establish that he was not responsible for the tax or that he did not wilfully fail to pay it, [and if that were done] then the Government would have had to come forward with evidence to justify the assessment." Id. at 923. Because the District Court's treatment of the problem was unclear, the Court remanded for amplification as to the weight given by the District Court to the taxpayer's evidence challenging the assessment and to the presumption of administrative regularity attaching to the assessment.

■ Neither of these cases, then, is inconsistent with the proposition that a taxpayer challenging the correctness of a tax assessment, as a defense in a collection case, has the burden of persuading the fact finder by a preponderance of the evidence that the assessment is incorrect, a proposition that we find quite compelling upon consideration of the underlying policies and alternatives.

■■ Had Lease chosen to follow either of the more typical methods available for questioning his tax liability—Tax Court review of the asserted deficiencies or suit for refund of asserted overpayments—he would clearly have been obliged to present evidence contradicting the Commissioner's view of his tax liability and thus tending to rebut the presumption of correctness attaching to the assessment. See Niederkrome v. Commissioner of Internal Revenue, 266 F.2d 238, 241 (9th Cir. 1958), cert. denied sub nom. Royce v. Commissioner of Internal Revenue, 359 U.S. 945, 79 S.Ct. 725, 3 L.Ed.2d 678 (1959); cf. Flomarcy v. Commissioner of Internal Revenue, 324 F.2d 730 (2d Cir. 1963). As a plaintiff or petitioner, he would also have had the burden of persuading the trier by a preponderance of the evidence that the deficiency was factually incorrect or that the amount paid exceeded the true tax liability. Cf. Horwitz v. United States, 339 F.2d 877 (2d Cir. 1965). We can see no reason why the taxpayer should be in any better position when he takes advantage of none of the available procedures and rather waits until the Government has to resort to enforcing its lien before he attempts to cast doubt upon the underlying tax liability.[10] We note the Court's observation in Bull v. United States, 295 U.S. 247, 259, 55 S.Ct. 695, 79 L.Ed. 1421 (1935), that "taxes are the life-blood of the Government, and their prompt and certain availability an imperious need."

The taxpayer is the one initially in the best position to know what income he had and how he disposed of it. Good records will go far to overcome the presumption of correctness attaching to the assessment. A strong enough showing will induce a prudent Government attorney to back up the assessment with the basis on which it was made, so that the factual differences may be resolved by the factfinder. Of course, to the extent that good records are unavailable, the taxpayer will be forced to rely more on the credibility of witnesses who can fill in the gaps in information; the taxpayer himself will no doubt be a prime witness. Where no records have been kept the taxpayer will have an understandably more difficult task in demonstrating to and persuading the trier that the Government's assessment is not as reliable as his word or recollection. The Government, as here, will normally have made its determination at a time when more evidence was available and facts were fresher in the minds of those who are knowledgeable, such as Lease, who was questioned then. That this burden of persuasion placed on the taxpayer is not insuperable is suggested by the considerable success had by Lease in this case, even after twenty years. He was able to persuade the jury that

---

10. On the other hand, the taxpayer is in an equally advantageous position as to proof of fraud, whether the action is one to review a deficiency, Int.Rev.Code of 1954 § 7454, to recover a refund, see Paddock v. United States, 280 F.2d 563 (2d Cir. 1960), or to collect a tax liability, as here. In all such proceedings, the Government must prove fraud by clear and convincing evidence.

some of the Commissioner's assessments were wrong and his liability was accordingly reduced from the $120,000 sought to the $32,462 awarded.[11]

Viewed with reference to this standard, Judge Levet's charge was entirely proper. He instructed the jury that:

the burden is therefore on the taxpayer in the first instance to disprove the computations made by the Commissioner by a fair preponderance of the credible evidence * * *

Should you find that the defendant has shown error with respect to a particular item the presumption of correctness of the computation by the Commissioner and assessment with respect to that item disappears and then the burden shifts to the government to prove whether any deficiency exists and if so in what amount.

It is not incumbent * * * upon the taxpayer under these circumstances to prove that he owed no tax or the correct amount of the tax which he did owe or the correctness of the item concerned. The burden in each instance is upon the government to prove the correct item.

Thus, overall, the Government has the burden of coming forward and persuading the trier that the taxpayer has or had a tax liability. If not challenged the assessment establishes that liability. A taxpayer's challenge must persuade the trier by a preponderance of the evidence that the assessment is erroneous. The Government then must still persuade the trier that on the basis of all the evidence there was a tax liability—perhaps in a different amount than initially asserted—for which the taxpayer was responsible.[12] The charge was fully in accordance with these principles.[13]

Another aspect of the failure to keep good records is seen with respect to Lease's claim that the Commissioner erroneously disallowed certain losses allegedly entailed by one of his multifarious enterprises. In addition to selling cordwood to the Government, selling tomatoes to the A&P, farming, operating a coffee shop in the Hotel Newburgh, and operating a rooming house, Lease was active in "horse breeding," which the Government terms a euphemism for gambling. Lease assumes that the Government conceded that the horse breeding business had some losses and claims, therefore, that as a matter of law he was entitled to have some of them allowed.

11. There is no question in this case about the propriety of the charge that the taxpayer need only establish that the assessment is erroneous, and the Government must prove the precise amount owing. In a refund case, the rule is apparently otherwise, the taxpayer being required to prove the amount of the refund due. See Compton v. United States, 334 F.2d 212, 216 (4th Cir. 1964); 10 Mertens, Federal Income Taxation § 58A.35 n. 15 (Zimet rev. 1964). Compare United States v. Sampsell, 224 F.2d 721, 723 (9th Cir. 1955) (bankruptcy).

12. In a criminal case the Government, of course, has the traditional burden of persuasion beyond a reasonable doubt, and a mere assessment cannot there play the same role in proving the Government's case. See Price v. United States, supra, 335 F.2d at 677.

13. We find no merit in Lease's additional argument that the presumption of correctness exists only with respect to performance of official acts by adjudicative officers and should, therefore, be inapplicable here because the actual investigation leading to the assessment was done by prosecuting officers. The basis of the presumption—that governmental officers act reasonably and according to law—would not normally be more or less applicable to any particular type of governmental conduct. Moreover, the presumption is rooted in Rindskopf which, like this case, involved an assessment by the tax collector, who is not an adjudicative officer. The actual source of his information, in any case, should be quite immaterial to the existence of the presumption, although possibly it could be helpful in rebutting the presumption. Indeed, that was a large part of Lease's rather successful defense here.

If the argument did not fall with failure of the record to support his assumption (Judge Levet rightly found no such Governmental concession) it would surely fall in the face of the meager evidentiary showing made by Lease. And with only a few random bills, with what Lease described as "a jumbled mess of figures," and his own word to go on, the jury was certainly able to find the assessment more probably correct than not on this matter. As the jury was instructed not to disallow asserted expenses solely because their exact amount could not be substantiated, and as there was ample basis for disallowing the losses, the requirements of Cohan v. Commissioner of Internal Revenue, 39 F.2d 540, 543–44 (2d Cir. 1930), were satisfied.

 Lease urges that, with respect to the coffee shop and rooming house, we should reverse Judge Levet and the jury both on the law and the facts. We disagree. From all the evidence, the jury could find at least the following facts. In late 1943, Lease, the "business head" of the family, had decided that the coffee shop was a good way to make some money. He put up $1,000 to purchase the lease on it and advanced $200 for rent. The shop was formally run as a partnership in the name of Lease's then wife Rose and his sister Frances. The books were kept by his present wife. Rose was to be "paid" $25 or $30 a week whether or not she even worked in the shop. In January 1944, shortly after operation of the shop had commenced in November, Rose ceased doing any work in the shop. Income remaining after expenses was put in an account in Rose's name and such funds were used for the Leases' living expenses. Rose filed no tax return. Lease conceded being very familiar with operation of the shop and admitted that he could have received profits from it. He was its "best customer," he said, if not its most profitable one. Similarly with the rooming house, Lease paid for its acquisition in 1944, although title formally was in Rose's name. As to that formality, the jury had ample reason to conclude that Lease had put virtually all of his property in the name of either his wife or his sister; he disavowed ownership when income was concerned although he was quick to claim it when losses or deductions were involved. As he put it with respect to losses on property held in Rose's name, "the fact that it was in her name didn't make a division as to who owned it and who didn't own it." The jury apparently agreed and treated all the property as owned by Lease.

 As for the law, there are really two questions. Was it error to reject Lease's requested instructions, and was it error to charge as Judge Levet did. Lease submitted 35 requests. None seems to have referred to the rooming house, and only two dealt with the question now raised about the coffee shop. Most of the 35 were "refused except as charged." Lease merely took a general exception to all refusals to charge. Even if that were adequate to preserve his objections, see Sears v. Southern Pac. Co., 313 F.2d 498, 505 (9th Cir. 1963), we would find no error. It is well settled that "[a] party cannot claim error in the refusal to give a requested instruction which is not entirely correct, or which it is not possible to give without qualification, or which is so framed as to be capable of being misunderstood." Cherry v. Stedman, 259 F.2d 774, 777–78 (8th Cir. 1958). That Lease's requests were too broad is seen from the virtual concession in Lease's brief that the formalities of ownership or legal title are not always controlling, particularly in a family situation. See, e. g., Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788 (1940); Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75 (1940); Commissioner of Internal Revenue v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670 (1945); Lusthaus v. Commissioner of Internal Revenue, 327 U.S. 293, 66 S.Ct. 539, 90 L.Ed. 679 (1945). Therefore Judge Levet was on sound ground in denying the requests except as charged.

 Looking to the charge, the jury was properly told that it must con-

sider only Lease's income, that is, income derived by Lease alone. No objection was made to this portion of the charge, which is sufficient reason for us to refrain from considering the point. See, e. g., John Fabick Tractor Co. v. Lizza & Sons, Inc., 298 F.2d 63, 65 (2d Cir. 1962). See generally 5 Moore, Federal Practice ¶¶ 51.-02–.04 (2d ed. 1951). An objection before the case went to the jury would have enabled Lease to point out the alleged deficiencies now claimed to exist, and would have allowed the trial court to provide amplification, if caution so dictated. Cf. Pauling v. News Syndicate Co., 335 F.2d 659, 669 (2d Cir. 1964). Here that was not possible. Ivory-tower precision cannot be expected of time-pressed trial courts, especially as to one small point among many. In any case, Lease has not sufficiently demonstrated that the charge given did not effectively embody a proper legal standard in the context of this case. The cases cited by Lease are so factually distinguishable as to be inapposite, as Judge Levet observed in ruling on the post-trial motions.[14] We see no basis for exercising our extraordinary discretionary power to consider objections to the charge not adequately brought home to the trial court. See McNamara v. Dionne, 298 F.2d 352, 355 (2d Cir. 1962); Curko v. William Spencer & Son Corp., 294 F.2d 410, 412–14 (2d Cir. 1961), cf. Troupe v. Chicago, D. & G. B. Transit Co., 234 F.2d 253, 259–60 (2d Cir. 1956). Compare Horton v. Moore-McCormack Lines, Inc., 326 F.2d 104, 108 (2d Cir. 1964).

■ Lease also contends that the Government failed to prove by clear and convincing evidence that he intentionally filed a false return or that he failed to file a return with the purpose of avoiding taxes. There is no question that the jury was properly charged on these questions. Lease only attacks the sufficiency of the evidence. We are persuaded that the jury could view all the evidence as clearly and convincingly establishing fraud and failure to file. Among other things the jury could have found that Lease failed to keep records, that he handled his affairs in such a way as to avoid the necessity of keeping records, that his business experience did not excuse these practices, that he purchased property and held it in the names of other people, that he overstated his cordwood costs, that he knew he was receiving income subject to tax, and that he failed to report income from particular sources. See Cirillo v. Commissioner, 314 F.2d 478, 482–83 (3rd Cir. 1963); Agnellino v. Commissioner of Internal Revenue, 302 F.2d 797, 801 (3rd Cir. 1962); Clark v. Commissioner of Internal Revenue, 266 F.2d 698, 718 (9th Cir. 1959); Powell v. Granquist, 252 F.2d 56, 59–62 (9th Cir. 1958); Comeaux v. Commissioner of Internal Revenue, 10 T.C. 201, aff'd sub nom. Cohen v. Commissioner of Internal Revenue, 176 F.2d 394, 401 (10th Cir. 1949); Chesterfield Textile Corp. v. Commissioner of Internal Revenue, 29 T.C. 651, 654 (1958); cf. Spies v. United States, 317 U.S. 492, 500, 63 S.Ct. 364, 87 L.Ed. 418 (1943); United States v. Eley, 314 F.2d 127, 132 (7th Cir. 1963).

Finding none of Lease's claims meritorious, we affirm.

14. After the jury's verdict, Lease moved for a directed verdict, judgment notwithstanding the verdict, and a new trial on the basis, in part, of the allegedly erroneous treatment of the coffee shop income. The evidence was sufficient for the jury to conclude that Lease had income from the sources in question. Not being required to conclude that the assessment was erroneous in that respect, the jury could also accept the accuracy of the amount of the assessed income. Compare Solomon v. United States, 276 F.2d 669, 673–74 (6th Cir. 1960); cf. Lilly v. Grand Trunk W. R.R., 317 U.S. 481, 488–89, 63 S.Ct. 647, 87 L.Ed. 411 (1943).