STRETCH–O–RAMA, INC., Plaintiff,

v.

Herbert C. **HART**, Carolyn A. **Hart**, The B.M. Trust, and the Internal Revenue Service, Defendants.

No. 4:97CV394.

United States District Court, E.D. Texas, Sherman Division.

Aug. 24, 1999.

David Anthony Scott, Richard Euclid Aubin, Jackson Lewis Schnitzler & Krupman, Dallas, TX, for Plaintiff.

Herbert C. Hart, Plano, TX, pro se.

Carolyn A. Hart, Plano, TX, pro se.

BM Trust Metairie, LA, pro se.

Ramona Stephens Notinger, Dept. of Justice, Tax Div., Dallas, TX, for IRS.

Jessie LeBlanc, Lockport, LA, pro se.

### MEMORANDUM OPINION and ORDER

BROWN, District Judge.

On this day came on for consideration the United States' Motion for Summary Judgment on its Cross-claim and for Show Cause Hearing, and after consideration of the motion, response [1], the supplemental

1. The Hart Defendants' response was filed on November 25, 1998.

response[2] of Defendants Herbert C. Hart and Carolyn A. Hart (the "Hart Defendants"), the documents filed by the Hart Defendants on December 9, 1998, February 22, 1999, and April 15, 1999, and the summary judgment evidence, the Court is of the opinion that the United States' motion should be granted in part and denied in part. Also, pending before the Court is the December 23, 1998 filing by the Hart Defendants[3] which seeks an order from the Court requiring the United States to institute proceedings against the Hart Defendants, appointing a three-judge court, and granting summary judgment in their favor. After considering this motion, the documents specified above, and the Court's prior Orders, the Court concludes that the Hart Defendants' motion should be denied.[4]

### INTRODUCTION

Plaintiff, Stretch–O–Rama, Inc., brought this interpleader action pursuant to Title 28, United States Code Section 2410, because it received competing claims for money owed by Plaintiff on account of services performed by Defendant Herbert C. Hart ("Hart").[5]

From August 1989 to August 1997, Hart was an independent sales representative of Plaintiff and received commissions from Plaintiff on the sales he made. On October 18, 1995, the IRS received the Hart Defendants' 1994 individual income tax return, which was signed by the Hart Defendants and reported a total amount due of $137,378.[6] On November 27, 1995, the IRS made a federal income tax assessment against the Hart Defendants for the 1994 tax year. *Govnt's Mot. for Summ.J., Ex. 3.* On July 1, 1996, the IRS received the Hart Defendants' 1995 individual income tax return, which was signed by the Hart Defendants and reported a total amount due of $22,054. *Id., Ex. 7* at 2. The IRS and the Hart Defendants entered into negotiations for the payment of the tax liabilities, and on July 3, 1996, the Hart Defendants signed an installment agreement and agreed to pay the sum of $2,893 per month toward their 1994 and 1995 income tax liabilities. However, after making only eight payments, the Hart Defendants stopped paying. Thereafter, on July 17, 1996, the IRS filed a federal tax lien in the real property records of Collin County in the amount of $118,561.22 against the Hart Defendants. Then, on August 12, 1996, the IRS made a federal income tax assessment in the amount of $23,080.48 against the Hart Defendants for the 1995 tax year. *Id., Ex.* 10.

Sometime around February 7, 1997, the Hart Defendants created the B.M. Trust, appointed three third-party trustees for the trust, named themselves as general managers, and notified Plaintiff that any commissions due to Hart should be paid to the B.M. Trust, which Plaintiff began doing. *Id., Ex. 12.* Thereafter, on February 21, 1997, the IRS issued its first Notice of Levy on Wages, Salary, or Other Income ("Notice of Levy") to Plaintiff notifying Plaintiff that the IRS had a lien in the amount of $155,639.66 against the Hart Defendants and that Plaintiff was required to pay the IRS any monies that Plaintiff

---

**2.** This document was filed on December 23, 1998, and in addition to responding to the United States' Motion for Summary Judgment, the Hart Defendants made several requests for relief.

**3.** Although called an affidavit, the Court will treat the Hart Defendants' filing as a motion.

**4.** Finally, the Hart Defendants filed a document on April 15, 1999, which requests a judicial determination of matters raised in their previous filings. Because this Order rules on the issues raised in the Hart Defendants' previous filings, this document is moot.

**5.** Plaintiff alleged no claim to the funds and placed them into the registry of the Court. Then, Plaintiff sought a discharge from all liability to any Defendant relating to this action, which was granted by Order of the Court dated August 5, 1998.

**6.** The return showed total tax due of $126,-573, interest of $6,443, and penalties of $4,362. *See Govnt.'s Ex. 2* at 2.

owed to Hart. When informed of the Notice of Levy, Hart told Plaintiff he had no income because he assigned his right to income to the B.M. Trust. Additionally, Hart warned Plaintiff that he would sue Plaintiff if Plaintiff complied with the notice. On April 14, 1997, the IRS filed a federal tax lien against the Hart Defendants in the amount of $23,048.48 for the Hart Defendants' 1995 tax liability. This lien was filed in the real property records of Collin County, Texas.

Since the IRS had not received any funds from Plaintiff regarding the Hart Defendants, it issued a Final Demand to Plaintiff on June 9, 1997, for $155,639. *Id., Ex. 15.* Then, on August 11, 1997, the IRS issued a Notice of Levy in the amount of $156,580 to Longstreet, a division of Plaintiff, to seize any commissions owed to the Hart Defendants. *Id., Ex. 17.* The next day, the Hart Defendants filed a voluntary petition for bankruptcy. However, after several months in the bankruptcy proceeding, the bankruptcy court dismissed the case with prejudice on November 19, 1997. *Id., Ex. 28.* On October 6, 1997, before the bankruptcy case was dismissed but after the IRS filed its pre-bankruptcy lien in the real property records of Collin County, the Hart Defendants transferred their residence at 5317 Catamaran, Plano, Texas (the "Plano house") by quitclaim deed to the Zebra IV Trust. *Id., Ex. 21.*

Not long after the Hart Defendants' bankruptcy case was dismissed, . Plaintiff filed this interpleader action and asked the Court to determine what party is entitled to the commissions owed by Plaintiff for services performed by Hart. The United States filed its Amended Cross-claim against the Hart Defendants, the B.M. Trust, and the Zebra IV Trust. *Def. IRS's Am. Cross-cl.* at 1. In its Cross-claim, the United States seeks to set aside the Hart Defendants' transfer of assets to the B.M. Trust and the Zebra IV Trust as void under the Texas Fraudulent Transfer Act, to reduce the tax assessments against the

Hart Defendants to judgment, and to foreclose its federal tax liens.

Now pending before the Court is the United States' Motion for Summary Judgment on its Cross–Claim and for Show Cause Hearing. Also, appearing pro se, the Hart Defendants have filed a motion requesting the Court to require the United States to institute proceedings, to appoint a three-judge court, and to grant summary judgment in their favor.

### SUMMARY JUDGMENT STANDARD

The granting of summary judgment is proper if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The trial court must resolve all reasonable doubts in favor of the party opposing the motion. *Casey Enterprises, Inc. v. Am. Hardware Mut. Ins. Co.,* 655 F.2d 598, 602 (5th Cir.1981) (citations omitted). The party seeking summary judgment carries the burden of initially demonstrating the absence of a genuine issue concerning any material fact in the case. This burden, however, does not require the moving party to produce evidence showing the absence of a genuine issue of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The moving party satisfies its burden by "pointing out to the district court ... that there is an absence of evidence to support the nonmoving party's case." *Id.*

Once the moving party has satisfied its burden, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e). If the nonmovant fails to set forth specific facts to support an essential element to that party's claim and on which that party will bear the burden of proof, then summary judgment is appropriate. *Celotex,* 106 S.Ct. at 2552–53. Even if the nonmovant brings forth evidence in support of its claim, summary judgment will be appropriate "unless there is sufficient evidence favoring the nonmoving party for a jury to

return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). A pro se litigant's motions and pleadings should be construed liberally, however the pro se litigant must still meet the requirements of Rule 56.

### Discussion

First, the Court will address the Court's subject matter jurisdiction over this action, followed by a discussion of the United States' motions and the Hart Defendants' motions.

## I. Subject Matter Jurisdiction

■ Although the Hart Defendants have not raised any argument regarding the Court's subject matter jurisdiction, the Court has an affirmative obligation to consider the question of subject matter jurisdiction sua sponte. The Court concludes it has subject matter jurisdiction pursuant to Title 28, United States Code Sections 1340 [7] and 1345 [8] and Title 26, United States Code Sections 7402 [9] and 7403 [10].

## II. United States' Motion for Summary Judgment

In its Motion for Summary Judgment, the United States seeks a determination as to the legitimacy and amount of the Hart Defendants' tax liability, a declaration that the United States is allowed to foreclose on its federal tax liens, and a finding that the Hart Defendants' conveyances to the trusts are void. The Court will discuss each ground.

**7.** This statute confers original jurisdiction on district courts of any civil action arising under any act of Congress providing for internal revenue.

**8.** This statute grants jurisdiction on district courts to entertain all civil suits brought by the United States.

### B. Legitimacy and Amount of Tax Liability

#### 1. United States' motion

The United States claims it is entitled to summary judgment as to the legitimacy and amount of the Hart Defendants' 1994 and 1995 tax liabilities because the tax amounts were taken directly from the tax returns filed by the Hart Defendants and signed under penalties of perjury. Additionally, the United States argues that the $95,698.86 assessed in the Certificate of Assessment for 1994 and the $23,080.48 assessed in the Certificate of Assessment for 1995 are entitled to a presumption of correctness.

#### 2. Hart Defendants' Response

While the Hart Defendants do not address the United States' arguments, they take the position that they are not "persons liable" under the Internal Revenue Code and, therefore, they do not owe any tax liability. Without citing any authority, the Hart Defendants attempt to support their contention by arguing that only federal employees are responsible to pay income taxes. Since they are not and have never been federal employees, they contend they are not liable for any income taxes. The Hart Defendants claim they filed 1994 and 1995 tax returns and made some payments associated with those returns out of mistake since they are not liable persons. Now aware of their mistakes, the Hart Defendants claim they are revoking the signatures on their tax returns and the "gifts" they made to the government.

#### 3. Court's Analysis

First, the Court finds the Hart Defendants' claim that only federal employees are subject to taxation to be frivolous.

**9.** The statute bestows jurisdiction upon district courts to entertain actions necessary or appropriate for enforcement of the internal revenue laws.

**10.** Finally, this statute authorizes a civil action in a district court to enforce an internal revenue tax lien or to subject property to payment of tax.

Instead, every United States citizen is subject to taxation under the laws of the Internal Revenue Code and, of specific relevance to this case, Title 26, United States Code Section 1 expressly states, "There is hereby imposed on the taxable income of—(1) every married individual (as defined in section 7703) who makes a single return jointly with his spouse under section 6013...." Since the Hart Defendants are subject to taxation, the Court will now address the significance of the tax assessments made by the IRS.

■ When a tax liability is not paid, the IRS has the authority to make a tax assessment against the individual or individuals who have not paid their taxes. In general, a government tax assessment is entitled to a presumption of correctness. *See United States v. Janis*, 428 U.S. 433, 440, 96 S.Ct. 3021, 3025, 49 L.Ed.2d 1046 (1976); *Bull v. United States*, 295 U.S. 247, 259–60, 55 S.Ct. 695, 79 L.Ed. 1421 (1935). A taxpayer who wishes to challenge the validity of the assessment, moreover, "bears the burdens both of production and of persuasion." *Ruth v. United States*, 823 F.2d 1091, 1093 (7th Cir.1987) (citing *Janis*, 428 U.S. at 440, 96 S.Ct. at 3025). In *United States v. Lease*, 346 F.2d 696, (2d Cir.1965), the Second Circuit set forth the manner by which the presumption operates:

> [O]verall, the Government has the burden of coming forward and persuading the trier that the taxpayer has or had a tax liability. If not challenged the assessment establishes that liability. A taxpayer's challenge must persuade the trier by a preponderance of the evidence that the assessment is erroneous. The Government then [once the taxpayer meets her burden] must still persuade the trier that on the basis of all the evidence there was tax liability—perhaps in a different amount than initially asserted—for which the taxpayer was responsible.

*Id.* at 701.

In light of the presumption of correctness afforded to the United States' tax assessments for 1994 and 1995 and the failure of the Hart Defendants either to argue or to introduce any evidence that the proposed assessments are incorrect, the tax assessments rendered against the Hart Defendants are taken as accurate. Since no material fact issues remain, summary judgment on this issue should be granted and the United States is entitled to a finding that the Hart Defendants owe federal income taxes for 1994 and 1995 in the amounts expressed in the Certificates of Assessment plus statutory interest and penalties.

## B. Foreclose Tax Liens on Interpleader Funds

### 1. United States' Motion

In support of its request for foreclosure of its liens on the commissions, the subject of this interpleader action, the United States claims that pursuant to Section 6321 of the Internal Revenue Code, statutory federal tax liens arose by operation of law on the dates of the subject tax assessments. Also, the liens apply to currently owned as well as after-acquired property. The United States contends it properly perfected its interest in the interpleader funds by filing tax liens in the personal property records of Collin County, Texas, against the Hart Defendants individually and the B.M. Trust.

### 2. Court's Analysis

■ Notwithstanding the Hart Defendants' failure to respond to the United States' request, the Court finds that the United States' assertion is meritorious. Section 6321 provides that if any person liable to pay tax fails or refuses to pay the tax after demand, then a lien arises in favor of the United States upon that person's property in the amount of the unpaid tax liability, including interest, costs, and penalties which may accrue. 26 U.S.C. § 6321. "The lien arises on the date that the IRS assesses unpaid taxes, applies to

currently owned as well as after-acquired property, and continues until the taxpayer satisfies the debt, or the statute of limitations runs." *Texas Commerce Bank–Fort Worth, N.A. v. United States,* 896 F.2d 152, 161 (5th Cir.1990).

■ In this case, the summary judgment evidence indicates the Hart Defendants neglected or refused to pay a substantial portion of their 1994 taxes and all of their 1995 taxes after assessment, notice, and demand by the United States. Therefore, the United States is entitled to a judgment that it has a valid lien against the Hart Defendants' property as of the dates of the tax assessments. Here, the United States seeks to enforce its tax lien by foreclosing on the interpleader funds.[11] As will be explained in the next section, the Court finds that the Hart Defendants have a property interest in the interpleader funds. Since no genuine issues of material fact remain, summary judgment should be granted in favor of the United States and the United States is entitled to enforce its tax liens arising from the 1994 and 1995 tax debts against the interpleader funds.[12]

## C. Set Aside Conveyances

### 1. United States' Motion

The United States argues that Hart's conveyance of his interest in the commissions to the B.M. Trust and his conveyance of the Plano house to the Zebra IV Trust were fraudulent under the Texas Fraudulent Transfer Act Sections 24.005 and 24.006.[13]

Section 24.005 provides, in relevant part, as follows:

(a) A transfer made ... by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made ... if the debtor made the transfer or incurred the obligation: (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; .... (b) In determining actual intent under Subsection (a)(1) of this section, consideration may be given, among other factors, to whether: (1) the transfer or obligation was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; ... (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) the transfer was of substantially all the debtor's assets; (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred; ...; (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; [and] (10) the transfer occurred shortly before or

---

**11.** A federal tax lien is not self-executing and requires affirmative action by the United States, such as the institution of a lien-foreclosure suit, to enforce collection of the unpaid taxes. *Id.* at 720. Section 7403(a) authorizes the institution of a civil action in federal district court to enforce a lien "to subject any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax." 26 U.S.C. § 7403(a). Section 7403(b) provides: "All persons having liens upon or claiming any interest in the property involved in such action shall be made parties thereto." Since none of the parties have notified the Court that any other party might have a lien or claim to the interpleader funds, the Court's determination as to the United States' rights are based on an understanding that no third party has such a claim.

**12.** In its Motion for Summary Judgment, the United States only sought to enforce its tax lien against the interpleader funds. After it filed this motion, the United States filed its Amended Cross-claim and sought to enforce its tax liens against both the interpleader funds and the Plano house. However, the United States never amended its Motion for Summary Judgment to reflect such relief.

**13.** The United States offered summary judgment evidence as to both the commissions and the Plano house, therefore, the Court construes the United States' motion to request a finding of fraudulent conveyance as to both of these assets.

shortly after a substantial debt was incurred.

Tex.Bus. & Com.Code Ann. § 24.005 (Vernon 1987). Additionally, Section 24.006 states, in part, as follows: "A transfer made ... by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made ... if the debtor made the transfer ... *without receiving a reasonably equivalent value in exchange for the transfer* ... and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer...." *Id.* § 24.006(a) (emphasis added).

To support its claim of fraudulent intent by the Hart Defendants, the United States offers the deposition of Saul Tawil ("Tawil"), Plaintiff's president. Tawil testified that Hart told him the reason Hart set up the B.M. Trust was to avoid paying taxes. *Dep. of Tawil* at 15. Also, the United States points to the following testimony from Hart during a hearing in the Hart Defendants' bankruptcy proceedings: (1) He stated he did not currently own any personal property, household goods, or the Plano house, *Govnt's Ex. 27* at 8–9; (2) He did own these items, but transferred them to the Zebra IV Trust in February of 1997 and received nothing in return for his transfer, *Id.*; (3) He did list the Plano house on his bankruptcy schedule under penalties of perjury, *Id.* at 10–12, *Id. Ex. 20*; (4) He filed for bankruptcy at a time when the IRS had liens on the Plano property and posted it for sale, *Id. Ex. 27* at 11–12; (5) He received no benefit from the B.M. Trust in exchange for his assignment of commissions from Plaintiff, *Id.* at 14–15; (6) The B.M. Trust pays all of his bills and expenses and if funds are available, the trust pays him up to $3,000 a month, *Id.* at 17; and (7) He offered to accept a $20,000 discount from the monies owed by Plaintiff

if Plaintiff would immediately pay him after his bankruptcy case was dismissed, *Id.* at 20–21. Additionally, the United States argues that Hart continued directing the use of the commissions and living in the Plano house after these assets were transferred.

The United States contends that the transferred property comprised a substantial majority of the assets owned by the Hart Defendants and that the transfers occurred after the federal tax liabilities were assessed against the Hart Defendants. Accordingly, since the United States was a creditor at the time the Hart Defendants made the transfers, which left them insolvent, the transfers were made with fraudulent intent and are voidable as to the United States.

## 2. Court's Analysis

█ Without evidence or a response from the Hart Defendants, the undisputed facts indicate that the United States was already a creditor of the Hart Defendants in February of 1997 when the Hart Defendants transferred property to the B.M. Trust and the Zebra IV Trust.[14] Section 24.005 of the Texas Fraudulent Transfer Act provides that the transfers to these two trusts are fraudulent as to the United States if the Hart Defendants made the transfers with "actual intent to hinder, delay, or defraud any creditor." Tex.Bus. & Com.Code Ann. § 24.005 (Vernon 1987). The Court finds that the undisputed summary judgment evidence raises a strong inference of actual intent to hinder, delay, or defraud by the Hart Defendants. *See Roland v. United States*, 838 F.2d 1400, 1402–03 (5th Cir.1988) (stating that when several indicia of fraud are found, they can be a proper basis for an inference of fraud). Here, the summary judgment evi-

---

14. The IRS assessed the Hart Defendants' 1994 tax liability on November 27, 1995, and the 1995 tax liability on August 12, 1996. *See Govn't Ex. 3 and 10.* The notices of tax assessment and the Hart Defendants' failure to pay their liabilities gave rise to a statutory lien in favor of the United States on the dates

specified above. *See* 26 U.S.C. §§ 6321–22. Additionally, the United States was deemed a creditor of the Hart Defendants from the date when the obligation to pay taxes accrued. *See Short v. United States*, 395 F.Supp. 1151, 1154 (E.D.Tex.1975).

dence indicates that the Hart Defendants retained possession of the Plano house, exercised control over how the funds in the B.M. Trust were spent, transferred substantially all of their assets to trusts, received nothing in exchange for the transfers, and transferred the properties after the United States attempted to enforce its liens. Since the summary judgment evidence indicates the Hart Defendants transferred these assets with actual intent to hinder, delay, or defraud the United States and no question of material fact remains, these transfers were void as to the United States.

In summary, the Court finds that the Hart Defendants owe tax liabilities for 1994 and 1995 in the amounts expressed in the Certificates of Assessment plus statutory interest and penalties. Additionally, the Court concludes that the United States is entitled to foreclose its liens in the interpleader funds and the Hart Defendants' conveyances of the commissions and the Plano house are void as to the United States.

### III. United States' Motion for a Show Cause Hearing

The United States requests a Show Cause Hearing to determine whether the Hart Defendants and the B.M. Trust, through its trustees, should be held in contempt of Court. The United States claims that the Hart Defendants filed a letter on September 9, 1998, and that the B.M. Trust filed a document on November 3, 1998, in violation of the Court's Order dated August 5, 1998. The Court is not inclined to grant this request because the Court is not persuaded that the Order was specific enough to cover the filing made by the Hart Defendants or the B.M. Trust. However, the Hart Defendants and the B.M. Trust, acting through its trustees, are notified that the Court has the power to impose sanctions against parties who violate Orders of the Court.

### IV. Hart Defendants' Filing

On December 23, 1998, the Hart Defendants filed a document entitled "3rd AFFIDAVIT by Herbert Charles, Hart and Carolyn Ann, Hart." In this document, the Hart Defendants seek an Order from the Court requiring the United States to institute proceedings to condemn or release the Hart Defendants' property. Also, the Hart Defendants request the Court to appoint a three-judge court [15] and to grant summary judgment in their favor.

As to the Hart Defendants' request for the Court to require the United States to institute proceedings and the request for the three-judge court, the Court is of the opinion that these requests are not supported by law, therefore, they should be denied. Regarding the Hart Defendants' request for summary judgment in their favor, the Court notes that this request is based on the argument that they are not "persons liable" under the Internal Revenue Code and, therefore, they do not owe any tax liability. This argument was raised by the Hart Defendants in response to the United States' Motion for Summary Judgment and the Court concluded it had no merit; therefore, the Hart Defendants' request for summary judgment should be denied.

### CONCLUSION

For the foregoing reasons, the United States' Motion for Summary Judgment should be granted and its Motion for Show Cause Hearing should be denied. Additionally, all the relief requested by the Hart Defendants in their December 23, 1998 motion should be denied. Any other relief requested by either party is hereby denied.

On or before ten (10) days from the date of the signing of this Memorandum Opinion and Order, the United States shall submit a determination of the Hart Defen-

---

**15.** The Hart Defendants also requested a three-judge district court in their response to the United States' Motion for Summary Judgment.

dants' current tax liabilities for 1994 and 1995, including statutory interest and penalties, so the Court can determine what amount of interpleader funds should be paid to the United States. The United States shall also submit a proposed final judgment at this same time.

IT IS SO ORDERED.