**Donald R. FERGUSON,**
**Plaintiff/Counterclaim**
**Defendant,**

v.

**UNITED STATES of America,**
**Defendant/Counterclaim**
**Plaintiff,**

v.

**Richard Musal and Nicholas P. Miller,**
**Counterclaim Defendants.**

**No. 4:02–CV–40449.**

United States District Court,
S.D. Iowa.
Central Division.

Sept. 3, 2004.

Harold N. Schneebeck, Jr., Brown, Winick, Graves, Gross, Baskerville & Schoenebaum PLC, West Des Moines, IA, for Plaintiff.

Laquita Taylor Phillips, Teresa Dondlinger Trissell, U.S. Dept. of Justice, Washington, DC, Jan M. Mohrfeld–Kramer, Ronald L. Mountsier, William S. Smith, Smith, Schneider, Stiles, Hudson, Serangeli, Mallaney & Shindler PC, James R. Monroe, Jerrold Wanek, Garten & Wanek, Des Moines, IA, for Defendants.

## ORDER

GRITZNER, District Judge.

Before the Court is Counterclaim Defendant Nicholas Miller's Motion for Litigation Costs; Counterclaim Defendant Donald R. Ferguson's Motion to Modify Judgment and Motion for Attorney Fees; Counterclaim Plaintiff United States' Renewed Motion for Judgment as a Matter of Law; and Counterclaim Defendant Richard Musal's Motion to Reconsider. The motions came on for hearing on August 25, 2004. The Government was represented by Laquita Taylor–Phillips; Counterclaim Defendant Ferguson was represented by Harold Schneebeck and Kelly Helwig; Counterclaim Defendant Richard Musal was represented by Ronald Mountsier; and Counterclaim Defendant Nicholas Miller was represented by Jerrold Wanek and James Monroe. The matter is now fully submitted to the Court for review.

The litigation stems from an IRS penalty in the amount of $1,300,552.09 that was assessed against Donald Ferguson ("Ferguson"), Nicholas Miller ("Miller") and Richard Musal ("Musal") arising from unpaid excise taxes owed by Access Air, a company in which these men held management positions. On May 6, 2004, the Court entered an Order denying Counterclaim Defendant Nicholas Miller's Motion for Summary Judgment, denying Defendant/Counterclaim Plaintiff USA's Cross–Motion for Summary Judgment against Counterclaim Defendant Nicholas Miller, and granting Defendant/Counterclaim Plaintiff USA's Cross–Motion for Summary Judgment against Counterclaim Defendant Richard Musal.

On May 7, 2004, Musal filed a Motion to Amend, requesting that the Court amend the May 6, 2004, Order and allow Musal to proceed to trial on the issue of the accuracy of the IRS assessment amount. On May 18, 2004, the Court entered an Order denying Musal's Motion to Amend, finding that all of the arguments Musal offered in support of his Motion to Amend were presented during the summary judgment stage of the litigation and considered by the Court at that time. The Court further noted that Musal offered no evidence to demonstrate that any manifest errors of law or fact, or any newly discovered evidence, existed. The Court held that relief under Rule 59(e) was not appropriate.

On May 18, 2004, the Court entered an Order denying Plaintiff/Counterclaim Defendant Donald Ferguson's Motion for Summary Judgment.

A jury trial on Ferguson's refund claim and the Government's counterclaims against Ferguson and Miller began on May 24, 2004. At the close of Ferguson's case in chief, the Government moved for judgment as a matter of law on Ferguson's claim for refund. After hearing arguments from counsel on the motion and upon consideration of the evidence produced in the trial, the Court granted the Government's motion for judgment as a matter of law on the refund claim. Thus, the refund case had come to a close, and the trial continued on the claims brought by the Government.

On May 28, 2004, the jury returned its verdict, finding Ferguson to be a responsible person who willfully failed to account for and pay over Access Air's excise taxes for the second and third quarters of 1999.

The jury further found that the second and third quarter assessed excise taxes were erroneous and excessive. The jury determined that the amount of the excise taxes owed were $47,521.11 for the second quarter and $48,043.32 for the third quarter. The jury found that Ferguson was not a responsible person during the fourth quarter of 1999. The jury found Nicholas Miller was not a responsible person.

Judgment against Ferguson was entered in the case on June 2, 2004. On June 7, 2004, Nicholas Miller filed a Motion for Litigation Costs, seeking $65,341.75 in attorney fees and costs. On June 17, 2004, Donald Ferguson filed a Motion for Attorney Fees and Litigation Costs, seeking $140,724.36. The Government has resisted both Ferguson's and Miller's motions for litigation costs, asserting that the Government's position at trial was substantially justified.

## I. NICHOLAS MILLER'S POST-TRIAL MOTION FOR LITIGATION COSTS

"Section 7430 of the Internal Revenue Code provides for a discretionary award of reasonable costs and attorney's fees incurred in administrative and judicial tax proceedings by a taxpayer who is the prevailing party, has exhausted available administrative remedies, and did not unreasonably protract the administrative or judicial proceedings." *Sherbo v. C.I.R.*, 255 F.3d 650, 652–53 (8th Cir.2001). Miller asserts, and the Government does not contest, that he has exhausted available administrative remedies and he has not unreasonably protracted the administrative or judicial proceedings.

 "A taxpayer is not considered a 'prevailing party,' and is not entitled to litigation costs, if the government's position was substantially justified." *Kaffenberger v. United States*, 314 F.3d 944, 960 (8th Cir.2003) (citing § 7430(c)(4)(B)). "The position of the United States is substantially justified if it has a reasonable basis in both law and fact, a determination made on a case by case basis." *United States v. Bisbee*, 245 F.3d 1001, 1007 (8th Cir.2001) (internal citations omitted).

Miller prevailed on the issue of whether he was a responsible person for the second, third, and fourth quarters of 1999. Miller argues that the Government's litigation position that he was a responsible person was not substantially justified. In support of his argument, Miller points to the arguments he presented at the summary judgment stage of this litigation and again at the trial. In support of its contention that its litigation position was substantially justified, the Government relies on the fact that Miller signed the first quarter's tax return. The Government also relies on the Form 4180 Report of Interview with Individual Relative to Trust Fund Recovery Penalty that was completed by Miller.

"A party shall not be treated as the prevailing party ... if the United States establishes that the position of the United States in the proceeding was substantially justified." 26 U.S.C. § 7430(c)(4)(B)(i). "A 1996 amendment to [26 U.S.C. § 7430] explicitly placed the burden of proof on this issue on the government when it added § 7430(c)(4)(B)." *Sherbo*, 255 F.3d at 653; *see also Bloom v. United States*, 2001 WL 1191137, at *3 (W.D.Pa.2001) ("Government bears the burden of showing that its position was substantially justified."); *Richards v. United States*, 2001 WL 350241, at *1 (D.Mont.2001) ("The burden falls upon the United States to show that its position was substantially justified."); *Bregman, Berbert & Schwartz, L.L.C. v. United States*, 1999 WL 1315653, *1 (D.Md.1999) ("Congress has shifted the burden of showing the government's posi-

tion was 'substantially justified' from plaintiffs to the government under 26 U.S.C.A. § 7430(c)(4)(B)(i)"); *Florida Country Clubs, Inc. v. Comm'r Internal Revenue,* 122 T.C. 73, 79, 2004 WL 193574 (2004) (same). *But see Kaffenberger,* 314 F.3d at 960 (quoting *Bisbee,* 245 F.3d at 1007) ("The taxpayer bears the burden of proving that the government's litigation position was not substantially justified.").

The Government has asserted that Miller was a responsible party that willfully failed to pay. At hearing on the motion, the Government cited to Form 4180 in support of its argument that its litigation position was substantially justified. The Court has searched extensively through the record in this case and discovered that although the Form 4180 was completed by Miller, it has never been presented to the Court and is therefore not a part of this record. The Government's argument is substantially undermined by that failure to adequately create a record. However, the Court notes that even if Form 4180 were a part of the record in this case, the information contained therein fails to establish that Miller was a responsible party. Form 4180 merely provides a list of relevant factors pertinent to a responsible party determination and allows for an individual to check off those functions which the individual performed. Other than the single check mark, no further information is provided to indicate in any relevant detail how these functions were performed. There is also no information showing how the Government concluded, based solely on the boxes checked off on Form 4180, that Miller was a responsible person. Even a cursory review of the relevant law would demonstrate that such factors may indicate an individual is a responsible person in a company for this purpose but that the actual circumstances would demonstrate otherwise; thus, additional investigation is required.

■■■ "The Commissioner's position was substantially justified if it had a reasonable basis in law and fact." *Cox v. Comm'r,* 121 F.3d 390, 393 (8th Cir.1997). "The Commissioner cannot have a reasonable basis in both fact and law if it does not diligently investigate a case." *Nicholson v. Comm'r Internal Revenue,* 60 F.3d 1020, 1029 (3rd Cir.1995) (quoting *Powers v. Comm'r Internal Revenue,* 100 T.C. 457, 473, 1993 WL 175413 (1993)) (quotations omitted); *see also United States v. Estridge,* 797 F.2d 1454, 1458 (8th Cir.1986) (affirming award for litigation costs granted where Commissioner did not diligently investigate); *Matter of Evans,* 188 B.R. 598, 602 (Bkrtcy.D.Neb.1995). In the present case, it appears that the Government relied solely on Miller's mechanical functions at Access Air and failed to investigate whether Miller possessed any actual decision making authority within the company. The fact that Miller had a technical ability to sign checks, apply for credit, or sign promissory notes is by itself insufficient to establish that he is a responsible person under 26 U.S.C. § 6672. *See Bisbee,* 245 F.3d at 1008 (finding that mere technical check signing ability does not necessarily connote the authority to do so, and it is the possession of authority by the allegedly responsible person that is relevant to the reasonableness of the IRS's litigation position); *United States v. Barton,* 988 F.2d 58, 59 (8th Cir.1993) ("A person's technical authority to sign checks and duty to prepare tax returns are not enough to make the person responsible under the statute.").

■■ The Government argues that the Court's May 6, 2004, Order found a genuine issue of fact existed regarding whether Miller was a responsible person; therefore its litigation position was substantially justified. The Government overstates the na-

ture and impact of that inquiry. Factual *disputes* that precluded summary judgment do not necessarily establish that the Government's litigation position was substantially justified. In the Court's May 6, 2004, Order, the Court held that the record at that point in time demonstrated that a genuine issue of material fact existed regarding whether Miller had significant authority in the field of corporate decision making and action where taxes due to the federal government were concerned. The gaps present at the time of the summary judgment analysis were filled by trial evidence (or lack of evidence from the Government) that clarified the quality of the underlying investigation on this issue.

The Government has failed to demonstrate that it possessed any reasonable level of investigation information which tended to show that beyond his mere mechanical functions, Miller possessed significant authority with regard to corporate decision making or actions concerning the payment of federal taxes. A review of the record results in the conclusion that the Government has failed to meets it burden of establishing that its litigation position regarding Miller was substantially justified. Based upon the trial record, it is regrettable that Miller was forced through this process. Miller's Motion for Litigation Costs must be granted.

Counsel for Miller have submitted their Summary of Bills and Costs utilizing statutory limits on hourly rates for attorney fees. Pursuant to 26 U.S.C. § 7430(c)(1)(B)(iii), there is a limit on reasonable fees paid or incurred for the services of attorneys. 26 U.S.C. § 7430(c)(1)(B)(iii).

> The term "reasonable litigation costs" includes ... reasonable court costs, and ... reasonable fees paid or incurred for the services of attorneys in connection with the court proceeding, except that

> such fees shall not be in excess of $125 per hour unless the court determines that a special factor, such as the limited availability of qualified attorneys for such proceeding, the difficulty of the issues presented in the case, or the local availability of tax expertise, justifies a higher rate.

26 U.S.C. § 7430(c)(1).

> In the case of any calendar year beginning after 1996, the dollar amount referred to in clause (iii) shall be increased by an amount equal to such dollar amount multiplied by the cost-of-living adjustment determined under section 1(f)(3) for such calendar year, by substituting "calendar year 1995" for "calendar year 1992" in subparagraph (B) thereof. If any dollar amount after being increased under the preceding sentence is not a multiple of $10, such dollar amount shall be rounded to the nearest multiple of $10.

26 U.S.C. § 7430(c)(1)(B)(iii). Mr. Wanek and Mr. Monroe erroneously stated that the statutory limit on the hourly rate for pre–2004 attorney fees was $140. The IRS Revenue Procedures setting the cost of living adjustments for 2002 and 2003 indicate the hourly limit for attorney fee awards is $150. *See Cost–of–Living Adjustments for 2002*, Rev. Proc. 2001–59, 2001 WL 1558775 (2001) ("For fees incurred in calendar year 2002, the attorney fee award limitation under § 7430(c)(1)(B)(iii) is $150 per hour."); *Cost-of-Living Adjustments for 2003*, Rev. Proc. 2002–70, 2002 WL 31424344 (2002) ("For fees incurred in calendar year 2003, the attorney fee award limitation under § 7430(c)(1)(B)(iii) is $150 per hour."). Utilizing the $150 limit for fees incurred during 2002 and 2003, the attorney fees incurred by Garten & Wanek amount to $23,745. Fees incurred by the office of

James R. Monroe for the same time period would amount to $13,560.

Counsel for Miller calculated the fees incurred during 2004 using the correct statutory limit of $150. *Cost-of-Living Adjustments for 2004*, Rev. Proc. 2003–85, 2003 WL 22718036 (2003) ("For fees incurred in calendar year 2004, the attorney fee award limitation under § 7430(c)(1)(B)(iii) is $150 per hour."). Fees incurred by Garten & Wanek during 2004 amount to $21,780; fees incurred by the office of James R. Monroe during 2004 amount to $10,920.

The Court has reviewed the itemized fees and costs and finds them reasonable and necessary to Miller's defense. The Court awards attorneys fees in the amount of $70,005[1] to Miller, and reimbursement for reasonable and necessary expenses incurred in the amount of $2,318.51, pursuant to 26 U.S.C. § 7430.

## II. DONALD FERGUSON'S POST-TRIAL MOTIONS

### Ferguson's Motion to Modify Judgment

On June 10, 2004, Ferguson filed a Motion to Modify Judgment. Ferguson requests that the Court apply the overpayment from the 1999 first quarter taxes and fuel tax credits[2] against the total judgment amount of $95,564.43.

The Government resists Ferguson's motion. The Government asserts that the evidence at trial showed that overpayment credits from the first quarter of 1999 had been applied to the second and third quarters and that the evidence failed to show

that Access Air was entitled to any fuel tax credits.

▮ Mr. Robinson clearly testified at trial that the overpayment for the first quarter taxes were credited to the amounts owed in the subsequent quarters and trial exhibits 4000 and 4001 show that overpaid credit was applied to the assessed amount. Ferguson argues that it is irrelevant that Robertson allowed the first quarter's overpayments to be credited to the subsequent quarters' amounts reflected on the assessments, because those assessments were ultimately found to be erroneous and excessive by the jury. Ferguson contends that because the jury found the second and third quarter's taxes to be $47,521.11 and the third quarter's taxes to be $48,043.32, the first quarter's overpayment should be credited to those amounts.

Ferguson requested the following verdict form language: "If the assessed excise tax is erroneous, what is the correct amount of tax?" The verdict form submitted to the jury read: "If the assessed excise tax is erroneous, what is the amount of the excise taxes owed for the second quarter?"[3] Ferguson never requested that the Court instruct the jury in any manner regarding how to account for overpayment amounts or fuel tax credits. Indeed, such a request would have been futile since the record at trial was wholly inadequate to allow the jury to incorporate fuel tax credits.

▮ While the jury's precise method of calculating the amounts of the second and third quarter penalty assessments is un-

---

1. The reasonable value of services shown by affidavit are $45,525 (303.5 total hours × $150) for the fees of Garten & Wanek (Jerrold Wanek and Randall Jackson) and $24,480 (163.2 total hours × $150) for fees of the office of James R. Monroe.

2. Ferguson offers no explanation regarding the amount of the requested "fuel tax credits", and nothing in the record provides an adequate basis for a calculation.

3. The same language was used on the verdict form that pertained to the third and fourth quarters.

known to the Court, there is no basis upon which to conclude that the jury failed to consider credits relating to the overpayment of taxes from the first quarter of 1999. "The district court can only disturb a jury verdict to prevent a miscarriage of justice." *Beckman v. Mayo Found.*, 804 F.2d 435, 439 (8th Cir.1986). The record cannot support the conclusion that to allow the jury verdict to stand with regard to these amounts would result in a miscarriage of justice. The Court will not disturb the jury's findings regarding the assessment amounts for the second and third quarter of 1999. Ferguson's Motion to Modify Judgment must be denied.

### Ferguson's Motion for Attorney Fees and Litigation Costs

Judgment against Ferguson was entered in the case on June 2, 2004. On June 17, 2004, Donald Ferguson filed a Motion for Attorney Fees and Litigation Costs, seeking $140,724.36. The Government has resisted Ferguson's motion, asserting that its position at trial was substantially justified.

The Government does not contest the fact that Ferguson has exhausted available administrative remedies and has not unreasonably protracted the administrative or judicial proceedings. The sole issue to determine is whether Ferguson can be considered a prevailing party.

■■■ Ferguson contends that he is clearly a prevailing party in this lawsuit and entitled to attorney fees unless the United States establishes that its position in the litigation was substantially justified, citing 26 U.S.C. § 7430(c)(4)(B). Ferguson asserts that the trial testimony of Jerry Robertson and Charles Collins supports his assertion that the Government failed to adequately investigate the amount of the excise taxes due. Ferguson further maintains that the IRS investigation of this matter was not reasonable and was severely lacking with regard to the investigation into the amount of Access Air's excise tax liability and who the responsible parties were for each quarter of 1999.

Ferguson was not a prevailing party on his claim for a refund. Further, Ferguson did not prevail on the issue of his status as a responsible person who willfully failed to pay with respect to the second and third quarters of 1999. Although the jury ultimately found that the IRS assessed amounts for the second and third quarters were erroneous and excessive, the Court cannot conclude that Ferguson "substantially prevailed" in light of the jury's conclusion that some amount was owed for the second and third quarters.

■■■ The jury found in Ferguson's favor on the issue regarding whether he was a responsible person for the fourth quarter of 1999. "Although a jury's verdict is relevant to whether the government's position is substantially justified, it is not determinative, especially where the jury's finding is based on the preponderance of the evidence, as in this case." *Kaffenberger*, 314 F.3d at 960. The record does not support the conclusion that the Government was not substantially justified in its litigation position regarding the fourth quarter. The Government indicated that it determined Ferguson was a responsible party who willfully failed to pay under 26 U.S.C. § 6672 based on the following facts: Ferguson was the founder, director, president, and chief executive officer of AccessAir, Inc. ("AccessAir"); he was the chairman of the board for AccessAir Holding, Inc.; he had the authority to sign AccessAir's corporate checks; he was aware that the federal excise taxes imposed on the amounts paid for air transportation on AccessAir for the periods ending June 30, 1999, September 30, 1999, and December 31, 1999, were due; and he permitted Access Air's

other debts to be paid prior to those excise taxes.

 "Indicia of responsibility include the holding of corporate office, control over financial affairs, the authority to disburse corporate funds, stock ownership, and the ability to hire and fire employees." *Miller v. United States*, 1991 WL 53259, \*3 (S.D.Iowa 1991) (quoting *Thomsen v. United States*, 887 F.2d 12, 16 (1st Cir.1989)); *see also Thosteson v. United States*, 331 F.3d 1294, 1299 (11th Cir.2003) (recognizing same factors); *Denbo v. United States*, 988 F.2d 1029, 1032 (10th Cir.1993) (recognizing same indicia of responsibility).

> We ask whether such a person: (i) is an officer or member of the board of directors; (ii) owns a substantial amount of stock in the company; (iii) manages the day-to-day operations of the business; (iv) has the authority to hire or fire employees; (v) makes decisions as to the disbursement of funds and payment of creditors; and (vi) possesses the authority to sign company checks. No single factor is dispositive.

*Barnett v. IRS*, 988 F.2d 1449, 1455 (5th Cir.1993).

 "A responsible person acts willfully within the meaning of § 6672 whenever he acts or fails to act consciously and voluntarily and with knowledge or intent that as a result of his action or inaction trust funds belonging to the government will not be paid over but will be used for other purposes." *Olsen v. United States*, 952 F.2d 236, 240 (8th Cir.1991) (quoting *Hartman v. United States*, 538 F.2d 1336, 1340 (8th Cir.1976)) (quotations omitted). "A responsible person also acts willfully by proceeding with a reckless disregard of a known or obvious risk that trust funds may not be remitted to the government." *Id.* (quoting *Wood v. United States*, 808 F.2d 411, 415 (5th Cir.1987)).

The Government was aware that Ferguson was the founder, director, president, and chief executive officer of AccessAir, Inc., the chairman of the board for Access Air Holding, Inc., had the authority to sign Access Air's corporate checks, was aware that the federal excise taxes imposed on the amounts paid for air transportation on Access Air for the periods ending June 30, 1999, September 30, 1999, and December 31, 1999, were due, and permitted Access Air's other debts to be paid prior to those excise taxes. While Ferguson's authority had apparently been substantially reduced by the time of the fourth quarter of 1999, a reasonable question remained regarding his ability to impact the protection of the tax funds held in trust against other uses and the ultimate payment of those funds over to the Government. Given the case-law pertaining to what factors are relevant in determining who is a responsible person that willfully failed to pay, and the information possessed by the Government, the Court concludes the Government had a reasonable basis in both law and fact for its litigation position regarding whether Ferguson was a responsible person during the fourth quarter of 1999.

The Court concludes that Ferguson cannot be considered a prevailing party. Ferguson's Motion for Attorney Fees and Litigation Costs must be denied.

## III. THE UNITED STATES' RE-NEWED RULE 50 MOTION

On June 16, 2004, the Government filed a Renewed Motion for Judgment as a Matter of Law in accordance with F.R. Civ. P. 50. The Government requests that the Court grant it judgment as a matter of law on the issue of whether Ferguson proved that the trust fund recovery penalty assessments against him for the second and third quarters of 1999 are erroneous and excessive. Alternatively, the Government

requests that the Court enter judgment as a matter of law on the issue of whether Ferguson showed what the correct amount of the tax assessments should be for the second and third quarters of 1999 or on the issue whether Ferguson is liable to the United States for the amounts assessed against him for those quarters.

■■■ "A jury verdict must be affirmed unless, viewing the evidence in the light most favorable to the prevailing party, we conclude that a reasonable jury could have not found for that party." *Webner v. Titan Distrib., Inc.,* 267 F.3d 828, 833 (8th Cir.2001) (quoting *Cross v. Cleaver,* 142 F.3d 1059, 1066 (8th Cir.1998)). Viewing the evidence in the light most favorable to Ferguson, a reasonable jury could find that the assessment amounts were erroneous and excessive.

■■■ Because of the state of financial and operational disarray at the ultimate business failure of Access Air and the months that followed, it may be that a reasonable determination of proper assessments amounts were beyond the grasp of the most capable auditors. However, the inescapable reality of this lawsuit is that no minimally sufficient investigation was ever conducted, and the Government's trial counsel did nothing to remedy that impairment.[4] Throughout this matter, the Government was satisfied to rely solely on what was a patently flawed worksheet on excise taxes provided by the folding Access Air accounting department. Some discussion of the underlying circumstances is required.

The IRS claimed it obtained the worksheet from Charles Collins, who was employed by Access Air from January 1999 through May of 2000, acting as the accounting manager and later becoming the controller. Collins testified at trial that he did not know how to calculate excise taxes and that he had no idea how to put such information together. Collins testified that it was possible that he would have prepared a spreadsheet that calculated excise tax, although he did not recall preparing such a spreadsheet. Collins testified he did not know whether the numbers on the worksheet that was provided to IRS revenue agent Jerry Robertson reflected ticket sales or money collected. Collins further testified that he had no idea whether the information provided on the worksheet was accurate.

Robertson also testified at trial. Robertson testified that he specializes in the audit examinations of excise taxes. Robertson was assigned to determine Access Air's excise tax liability for the second, third, and fourth quarters of 1999. Robertson testified that he made contact with Collins, the controller at Access Air, and that Collins subsequently provided him with a worksheet showing the monthly liabilities for the periods of February through November of 1999. Robertson identified trial exhibit 4050 as the worksheet provided by Collins. Robertson testified that once he received this worksheet from Collins, he totaled up by quarter the liability shown on the worksheet and sent a report to Access Air along with a letter, requesting that Access Air sign it if they agreed with the report or to provide Robertson with additional information or additional documents if they did not agree with it. Robertson indicated that Access Air did not respond within the 30 day period;[5]

---

4. There was also little or no help on the assessment issue from Ferguson and his counsel and the refund claim; but the Court recognizes his refund claim was strategic, and Fer-guson would quickly lose interest in proving a case on behalf of the Government.

5. The reality of the situation was that there was no one at the failed business paying any

therefore, the report was sent in for assessment. Robertson testified that he had no reason to question the worksheet or the information provided on it by Access Air; further, Robertson testified that this was the only information that was made available to him.

Robertson further testified that he did not know whether the information provided on the worksheet were figures based upon ticket sales or receipts for ticket sales. He did not give any credit for fuel tax against his assessment on the report. Robertson stated that he was aware that between one to two million dollars was being held in a bank account in Minneapolis, which represented ticket sales that were never flown, but that he did not follow up on that information or utilize it in preparing the assessment.

Robertson testified that he knows how segment fees are calculated and that a segment tax should be divisible by $2.25.[6] Robertson reviewed the worksheet provided to him by Collins and noted that none of the segment tax calculations which appeared on the worksheet were divisible by $2.25. Despite this, Robertson testified that he accepted these numbers which were provided to him on the worksheet. Robertson stated that he did not know the basis for the figures and that it is possible that he could have over calculated the tax liability by as much as $400,000.

In addition, there was evidence presented at trial that indicated the first quarter taxes were miscalculated and overpaid by

Access Air, and the computer program utilized to calculate the excise taxes contained a problem which resulted in erroneous excise tax computations. There was also testimony that the excise tax amounts assessed by the IRS reflected a level of revenue that Access Air never achieved.

Given the testimony of Jerry Robertson and Charles Collins and viewing all of the evidence presented at trial in the light most favorable to Ferguson, a reasonable jury could have found that the assessments were erroneous and excessive. The Court will not disturb the jury's findings regarding the accuracy of the assessments.

■ Alternatively, the Government requests that the Court enter judgment as a matter of law on the issue of whether Ferguson showed what the correct amount of the tax assessments should be for the second and third quarters of 1999. At trial, the Court granted the Government's Rule 50 motion with regard to Ferguson's refund claim. Therefore, the suit became one solely dealing with the claims filed by the Government against Miller and Ferguson. Once Ferguson's refund claim was dismissed, Ferguson had no burden to establish the correct amount of the assessment. As explained at trial, in a tax deficiency suit, as opposed to a tax *refund* suit, once the taxpayer produces substantial evidence showing that the assessment is invalid, the presumption afforded to the IRS certificates of assessment disappears and the amount of the assessment becomes a fact issue which must be resolved by the fact finder.

---

attention to this IRS inquiry, and there is no evidence Ferguson, Musal, or Miller were on notice to respond.

6. The excise tax is calculated based upon a percentage of the ticket's price, plus a flat rate per each domestic flight segment. The rates of tax applicable for 1999 are as follows:

| | Rate of passenger | Per flight segment |
| --- | --- | --- |

| Domestic segments beginning | tax | charge |
| --- | --- | --- |
| After 9/30/98 and before 10/1/99 | 8% | $2.00 |
| After 9/30/99 and before 2000 | 7.5% | $2.25 |

Thus, the segment taxes should have been divisible by either $2.25 or $2.00, depending on when the flight segment took place.

[W]hen the taxpayer has offered substantial evidence to support his position, the presumption disappears. The fact issue must then be resolved by the [factfinder] upon the basis of the evidence before it. If the taxpayer has demonstrated that the deficiency determination is erroneous, *the taxpayer is not required to establish the correct amount of tax.*

*Comm'r Internal Revenue v. Riss*, 374 F.2d 161, 166 (8th Cir.1967) (emphasis added).

7. The Government did little toward meeting the burden of proving the amount of tax owed, despite the clear indication that was its task alone upon the dismissal of the refund action, and the fact that the jury was to be instructed regarding that ultimate burden on the Government. The Eighth Circuit has not decided the specific issue of who bears the burden of proof in a tax deficiency suit, brought in district court, once the taxpayer proves the assessment is erroneous. In *DiMauro v. United States*, the Eighth Circuit stated that a split existed in the circuits on the issue.

When the government attempts to collect a tax by way of a counterclaim in district court, as in this case, the circuits are split over the burden of proof allocation once the taxpayer has proved the assessment erroneous. *United States v. Janis*, 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976) (no attempt to resolve split). Compare *DeLorenzo v. United States*, 555 F.2d 27, 29 (2d Cir.1977) and *United States v. Rexach*, 482 F.2d 10, 16–17 (1st Cir.), cert. denied, 414 U.S. 1039, 94 S.Ct. 540, 38 L.Ed.2d 330 (1973) (taxpayer not only bears the burden of proving that the assessment was erroneous, but also must prove the correct amount of taxes owed) with *Higginbotham v. United States*, 556 F.2d 1173, 1175 (4th Cir.1977) and *Carson v. United States*, 560 F.2d 693, 696 (5th Cir.1977) (taxpayer bears only the burden of proving the assessment erroneous; the burden then shifts to the government to prove the correct amount of taxes owed). We do not reach the issue because DiMauro has failed to prove the assessments erroneous.

■ In the present case, the jury determined that the tax assessments for the second and third quarters were erroneous and excessive; therefore, the presumption of correctness disappeared and the jury was left with the task of determining, based upon all of the evidence produced at trial, what the correct assessment amounts were for the second and third quarters. Ferguson was not required to establish the correct amount of the penalty assessments.

■ Stunningly, given its ultimate burden in this case,[7] the Government also

*DiMauro v. United States*, 706 F.2d 882, 884 n. 5 (8th Cir.1983). The Second, Fourth, Fifth, and Sixth Circuit have addressed this specific issue. Each of these circuits have decided that in a tax deficiency suit, once the taxpayer satisfies his burden of persuading the factfinder by a preponderance of the evidence that the assessment is incorrect, the taxpayer bears no further burden to establish the correct assessment amount.

The Second Circuit has stated that a taxpayer challenging the correctness of a tax assessment as a defense in a collection case has the burden of persuading the trier by a preponderance of the evidence that the assessment is incorrect. *United States v. Lease*, 346 F.2d 696, 700 (2nd Cir.1965). However, although the burden of persuading the factfinder that the assessment is incorrect remains with the taxpayer, once the taxpayer meets this burden, the burden shifts to the government to establish the amount of the tax. *Id.* at 701.

The Fourth Circuit has also found that in a deficiency case, the government bears the burden of showing the correct assessment amount once the taxpayer satisfies its burden to show the assessment is erroneous. "[I]n response to a counterclaim, a taxpayer need only prove by a preponderance of the evidence that the Government's assessment is erroneous, and, once that burden is met, the Government, not the taxpayer, must prove how much the taxpayer actually owes." *Higginbotham*, 556 F.2d at 1175 (citing *Lease*, 346 F.2d at 701). "It is well established that, in a deficiency suit by the Government to collect taxes, a taxpayer need not show how much he actually owes once he has shown the

contends that the jury resorted to mere speculation in arriving at its findings regarding the correct assessment amounts for the second and third quarters of 1999. In support of this argument, the Government asserts that the only evidence before the jury with respect to the amount of the assessments were the IRS certified transcripts showing the assessment amounts for each quarter and the worksheet that Access Air provided to the IRS. This argument is ironic considering the only evidence before the IRS when it made its own assessment was the worksheet itself.

The Government's argument has no merit. In addition to the IRS certified transcripts and the worksheet provided to the IRS, the jury also had the benefit of the Access Air, Inc., Quarterly Federal Excise Tax Return from the first quarter of 1999, balance sheets from February through November of 1999 which reflected accrued excise taxes owing, and a copy of the check that was submitted to the IRS in payment of the first quarter taxes. In addition, it is worth noting that the IRS Certified Assessments reflected the amount of overpayments that were made in relation to the first quarter taxes. There was sufficient financial record evidence on which the jury could base an assessment amount; despite the inadequate trial performance by the Government, the jury still had access to more relevant financial information in reaching its penalty assessment amount than the IRS had when it made its own assessment. The Court cannot find as a matter of law that the only assessment amount the jury could have reached was the amount assessed by the IRS. Quite the contrary, a verdict at the assessed amount would have been set aside by this Court.

 Finally, the Government maintains that the jury's question during deliberations of whether it should "determine what is owed specifically by Mr. Ferguson or owed to treasury in total" indicates that the verdict resulted from the jury apportioning to Ferguson personally a smaller amount of a larger sum it believed was owed to the United States Treasury. The Government is engaging in speculation.

The jury was instructed that:

Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax ... shall, in addition to other penalties provided by law, be *liable to a penalty equal to the*

---

Government's claim to be erroneous." *Id.* (citing *Helvering v. Taylor,* 293 U.S. 507, 515, 55 S.Ct. 287, 79 L.Ed. 623 (1935)).

The Fifth Circuit has reached the same conclusion. "[W]here the Government attempts to collect a tax by way of counterclaim in a refund suit, the taxpayer bears *only* the burden of proving the assessment erroneous." *Suarez v. United States,* 582 F.2d 1007, 1010 (5th Cir.1978) (emphasis added); *see also Carson v. United States,* 560 F.2d 693, 696 (5th Cir.1977); *Bar L. Ranch, Inc. v. Phinney,* 426 F.2d 995, 999 (5th Cir.1970) ("[A] taxpayer defending a collection suit need only show that the Government's assessment was arbitrary and [ ] the burden is then on the Government to show whether any deficiency exists and, if so, in what amount.").

The Sixth Circuit is in accord with the Second, Fourth, and Fifth circuits. "[I]f the taxpayer shows the assessment was not correct, the burden shifts back to the government to maintain and establish the correctness of the assessment." *Sinder v. United States,* 655 F.2d 729, 731 (6th Cir.1981). "[T]he burden on the taxpayer is not merely a burden of producing evidence; it is a burden of persuasion by the preponderance of the evidence that the assessment is not correct. Only if that is shown must the government show, on its counterclaim, what the correct assessment is." *Id.* (citing *Higginbotham,* 556 F.2d at 1175).

*total amount of the tax* ... not collected, or not accounted for and paid over. (Final Jury Instruction No. 18) (emphasis added). This language clearly states that a responsible person is to be held liable to a penalty equal to the total amount of the tax, and not some portion thereof. The jury was further instructed that:

A person associated with a corporation who has the status, duty and authority to avoid the corporation's default in the payment of taxes, and who willfully fails to do so, is personally liable to the government in the form of a penalty for the amount of taxes collected but not paid. This penalty is generally referred to as the "Trust Fund Recovery Penalty" or "100 percent penalty" *because the amount of the penalty is equal to 100% of the trust fund taxes that were collected by corporation but not paid to the government.*

(Final Jury Instruction No. 18) (emphasis added). The jury was also instructed that:

More than one person may be liable for the same failure of a corporation to collect, truthfully account for, or pay over taxes. However, the government will only collect an amount equal to the amount that was not collected, truthfully accounted for, and paid over. In other words, *while the government may be entitled to a judgment in the full amount of the trust fund recovery penalty from each and every responsible person,* the government will not collect the trust fund recovery penalty more than once.

(Final Jury Instruction No. 25) (emphasis added). When the Court and counsel addressed the jury question in chambers via conference call, the Government requested the jury be instructed that the assessment amount should be based on the amount owed to the United States Treasury. The Court noted to counsel for the Government that Final Jury Instruction No. 25 said as much. In response to this jury question, the jury was instructed, "You are directed to specifically read Instruction Number 25 in conjunction with all other instructions."

The Government has offered no evidence or convincing argument that the jury failed to understand or follow the Final Jury Instructions, which clearly specified that the penalty amount was to reflect 100% of the taxes owed. The Government's argument that the jury must have apportioned to Ferguson a smaller amount of a larger sum it believed was owed to the United States Treasury is without merit.

 "Post-verdict judgment as a matter of law is appropriate only where the evidence is entirely insufficient to support the verdict." *Belk v. City of Eldon,* 228 F.3d 872, 878 (8th Cir.2000); *see also Top of Iowa Co-op. v. Schewe,* 324 F.3d 627, 633 (8th Cir.2003). The record does not support the conclusion that the evidence is entirely insufficient to support the jury's findings. The Government's Renewed Motion for Judgment as a Matter of Law must be denied.

## IV. RICHARD MUSAL'S POST-TRIAL MOTION TO RECONSIDER

On June 7, 2004, Richard Musal filed a Motion to Reconsider. Musal requests that the Court vacate portions of its May 6, 2004, and May 18, 2004, Orders and grant Musal the opportunity to proceed to trial with respect to the sole issue of the accuracy of the penalty assessment amounts.

Musal contends that the standard for the grant of a Rule 56 motion for summary judgment and a Rule 50 motion for directed verdict are virtually identical, and therefore there is manifest error in the

Court ruling against Musal as to the accuracy of the tax assessment at the summary judgment stage, while denying the Government's Rule 50 motion on the same issue at trial.

"Summary judgment is appropriate, if, after viewing the evidence in the light most favorable to the nonmoving party, there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law." *Frye v. Kansas City Missouri Police Dept.*, 375 F.3d 785, 789 (8th Cir.2004). Musal contended at the summary judgment stage that the Government had not established the correct amount of the assessment against him, claiming that the assessment was inaccurately and erroneously computed. Musal asserted that the IRS assessment was clearly erroneous on its face, noting that the segment tax liability for the months of October and November 1999, were in the amounts of $41,050.80 and $43,103.34, respectively. Musal claimed that because the segment tax for those months should have been computed as a flat $2.25 for each flight segment, it was impossible for the segment tax for those months to be in the exact amount as assessed because the figures were not divisible by $2.25. Musal also claimed that there was evidence that at the time of the bankruptcy filing, a credit card company held between one and two million dollars of ticket revenue that had not been paid to Access Air, and that those funds would have included approximately $100,000—$200,000 of excise taxes. Musal asserted that he could not be said to have willfully failed to pay taxes which were never actually collected by Access Air.

Musal further claimed that there was evidence that during all of 1999, but particularly during the months of June and July of 1999, millions of dollars were spent by Access Air to purchase tickets on other airlines on behalf of stranded Access Air passengers. Musal claimed that there was evidence that, at least with respect to tickets purchased on United Airlines, excise tax was paid to United and that Defendant made no attempt to factor those tax payments into its computation of Access Air's tax liability. Musal asserted that the amounts paid by Access Air to provide its passengers with air transportation on other airlines should be treated as passenger refunds, thereby eliminating any excise tax liability due from Access Air.

In the May 6, 2004, Summary Judgment Order, the Court observed that Musal, in his capacity as President of Access Air, completed bankruptcy forms and swore under the penalty of perjury that the information included in the bankruptcy filing was true and correct to the best of his knowledge, information, and belief. In those filings, the IRS is listed as a creditor holding an unsecured priority claim in the amount of $1,724,630 for excise taxes and $390,850 in segment fees, amounts when added together are well in excess of the amount assessed against Musal by the IRS.

At the summary judgment phase, Musal did not claim to know the correct amount of Access Air's total excise tax liability for any of the quarters at issue. The Court recognized that because Access Air did not file returns for the second, third, and fourth quarters, the IRS had to rely on the records maintained by Access Air in calculating the excise taxes owing for those quarters and that the Commissioner's assessment was expected to be rational, not flawless (citing *Caulfield v. Comm'r*, 33 F.3d 991, 993 (8th Cir.1994) (quoting *Dodge v. Comm'r*, 981 F.2d 350, 353 (8th Cir.1992), *cert. denied*, 510 U.S. 812, 114 S.Ct. 58, 126 L.Ed.2d 28 (1993)) (quotations omitted)). Given the record before the Court at the summary judg-

ment phase of these proceedings, the Court could not conclude that relying on Access Air's own records was an unreasonable method for determining the corporation tax debt or that Musal has carried his burden of proving that the assessment against him was erroneous.

"According to Rule 50, judgment as a matter of law should not be granted unless 'a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.'" *Arabian Agric. Serv. Co. v. Chief Indus., Inc.*, 309 F.3d 479, 482 (8th Cir.2002) (quoting Fed. R.Civ.P. 50(a)(1)). At the close of Ferguson and Miller's case in chief and again at the close of all the evidence presented at trial, the Government moved for judgment as a matter of law on the issue of the accuracy of the assessment. Due to the nature of the testimony and evidence that had been presented during the trial, the Court found that Ferguson and Miller had successfully raised an issue with regard to the correctness of the assessment and therefore judgment as a matter of law was not appropriate. The Government's Rule 50 motion was therefore denied.

At the summary judgment stage, viewing the facts in the light most favorable to the Government, and given Musal's lack of evidentiary support on the issue, the Court was presented with a wholly different record than that developed on the issue at trial. Had Musal produced at the summary judgment phase the evidence and testimony that was produced at trial regarding the accuracy of the assessment, he would have survived summary judgment on that issue. The Court relied on the record as it existed at the summary judgment phase, and the Court's conclusions were supported by the record as it existed at that time. Due to the differing nature of the record as it existed at the time the summary judgment motion was decided by the Court, and as it existed at the time of the Government's Rule 50 motions, no manifest error exists in the Court's seemingly inconsistent rulings as to those motions.

Musal contends that the Court should exercise its power under Rule 59(e) to vacate its prior Orders determining Musal's liability as a matter of law. Musal asserts that the Court should amend its May 6, 2004, Order to reflect that a fact issue exists with respect to Musal's liability for the second, third, and fourth quarters of 1999, then argues that he should be granted additional time to submit a motion for partial summary judgment based on the doctrine of issue preclusion.

The Government asserts that Rule 59(e) cannot be used to re-litigate issues already decided by the Court, and that such a motion cannot be used as a vehicle to proffer new legal theories or to present new evidence that could have been offered prior to entry of judgment. The Government argues that the Court should not vacate its Orders to find that a fact issue exists with respect to Musal's tax liability because the Court has already determined Musal's liability for those quarters.

"Rule 59(e) motions are motions to alter or amend a judgment, not any non-final order." *Broadway v. Norris*, 193 F.3d 987, 989 (8th Cir.1999). "[A] decision is not final, ordinarily, unless it ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Miller v. Special Weapons, L.L.C.*, 369 F.3d 1033, 1034 (8th Cir.2004) (quoting *Cunningham v. Hamilton County, Ohio*, 527 U.S. 198, 204, 119 S.Ct. 1915, 144 L.Ed.2d 184 (1999)). The May 6, 2004, Order granting summary judgment against Musal constituted a final decision, as it ended the litigation against Musal on the merits and left nothing for the Court to do except direct the Clerk to enter judgment. The Court's May 18, 2004, Or-

der denying Musal's Motion to Reconsider likewise constituted a final order. However, "[a] Rule 59(e) motion must be filed within 10 days of the entry of judgment." *Arnold v. Wood*, 238 F.3d 992, 998 (8th Cir.2001). The Court's May 18, 2004, Order denying Musal's Motion to Reconsider made no changes or revisions to the May 6, 2004, Order granting summary judgment.

To decide when judgment was entered ... insofar as Rule 59(b) purposes are concerned, we must refer to a general rule enunciated by a long line of judicial authority, that the second judgment prevails and begins the running of the 10–day limitation, if it is a superseding judgment making a change of substance which disturbed or revised legal rights and obligations. However, if the Court does no more in the second judgment than make a clerical change, such as correct the names of parties or dates, the time for filing motions does not start to run from entry of the second judgment, but rather runs from date of the first judgment.

*Cornist v. Richland Parish Sch. Bd.*, 479 F.2d 37, 39 (5th Cir.1973) (quoting *Fed. Trade Comm'n v. Minneapolis–Honeywell Regulator Co.*, 344 U.S. 206, 211–212, 73 S.Ct. 245, 97 L.Ed. 245 (1952)) (quotations omitted). Because the Court's May 18, 2004, Order denying Musal's Motion to Reconsider made no changes or revisions to the May 6, 2004, Order granting summary judgment, the 10–day time period under Rule 59(e) began to run on May 6, 2004, and the instant motion, to the extent it seeks relief under Rule 59(e) is untimely and cannot be considered by the Court.

Musal also argues that relief under Rule 60(b) is appropriate due to the inherent and obvious inequity between the amounts deemed due from Musal and Ferguson for the second and third quarters of 1999 and the undisputed evidence that the IRS assessment for the fourth quarter cannot be correct. Musal further asserts that admissions by Jerry Robertson that occurred at trial constitute "newly discovered evidence." Specifically, Musal directs the Court to Robertson's admission that his tax computation could be off by over $400,000. Musal notes that counsel for Miller specifically asked Robertson during the Rule 30(b)(6) deposition if he had any idea if the IRS assessment was correct or not, and that counsel for the United States objected to that inquiry and directed Robertson not to respond on the grounds that Robertson's mental impressions were not discoverable.

Musal argues that it would be inherently unfair if he was denied the opportunity to show the assessment to be incorrect and he remained liable for the amount of $847,617.24 for the second and third quarters when a jury has determined the actual liability for those quarters to total only $95,564.43. Musal points out that the present situation is particularly confusing when one considers that the liability for the second and third quarters is "joint and several" among the several parties, and that pursuant to 26 U.S.C. § 6672(d) each responsible party is entitled to recover from other responsible persons any amounts paid beyond his proportional share of the liability.

The Government contends that Musal's argument that his liability for the second and third quarters should be the amounts for which the jury found Ferguson liable ignores the fact that there is insufficient evidence to support the jury's verdict that the assessments against Ferguson were erroneous and excessive. The Government asserts that to give Musal the benefit of replacing the Court's finding that Musal had not proved the assessment to be erroneous, with the jury's unsupported decision, deepens the legal error. As previously discussed, there was sufficient evi-

dence presented at trial to support the jury's verdict. The Government also argues that the jury was confused about whether it should be deciding what portion of an amount was owed specifically by Ferguson or the total amount that is owed to the United States Treasury. Again, as previously discussed, this argument is without merit.

The Government further argues that the Court should not vacate its Orders with respect to Musal's liability for the fourth quarter and permit him a trial, asserting that Musal's contention that newly discovered evidence exists is nothing more than mere speculation or surmise. The Government argues that no evidence was put forth to show that the assessment was off by over $400,000, that Robertson totaled the figures in an improper manner, or that the segment tax liability reflected on the worksheet had already been included in other totals on that worksheet.

 In order to prevail under Rule 60(b)(2), the movant must show that:

> (1) the evidence was discovered after trial; (2) due diligence was exercised to discover the evidence; (3) the evidence is material and not merely cumulative or impeaching; and (4) the evidence is such that a new trial would probably produce a different result.

*Schwieger v. Farm Bureau Ins. Co. of Neb.*, 207 F.3d 480, 487–88 (8th Cir.2000). The newly discovered evidence must be "sufficient to justify setting aside the original judgment." *Swope v. Siegel–Robert, Inc.*, 243 F.3d 486, 498 (8th Cir.2001).

The newly discovered evidence Musal claims exists in this case is Robertson's admission that his tax computation could be off by over $400,000. Musal directs the Court to the following exchange which occurred during the deposition of Robertson:

> MR. MONROE: You don't have any idea if the IRS assessment is correct or not, do you?

> MS. TAYLOR–PHILLIPS: I would object to that.

> MR. MONROE: I'm asking him a question.

> MS. TAYLOR–PHILLIPS: I object.

> MR. MONROE: What basis?

> MS. TAYLOR–PHILLIPS: I don't have any idea whether it's correct or not. He's not making any conclusions. He's here to state the facts of his examination.

> MR. MONROE: He's the one that recommended the amounts to be assessed, isn't he?

> MS. TAYLOR–PHILLIPS: We can mark this question and argue before the Court.

> MR. MONROE: You are going to advise him not to?

> MS. TAYLOR–PHILLIPS: That's correct.

Accordingly, Robertson never answered the question at his deposition. At trial, counsel for Miller asked the following question:

> MR. WANEK: As you sit here today, you may have over-billed by $400,000, isn't that correct?

> MR. ROBERTSON: That's possible. I relied strictly on these figures and added the two together.

Musal has not asserted that during the deposition of Robertson that Robertson was at any time specifically asked whether it was possible he may have over-billed. This is the only item Musal points to in support of his contention that newly discovered evidence exists.

Robertson's testimony that it is possible he may have over-billed by $400,000 constitutes his own opinion; it does not constitute a fact. "Rule 60(b) permits consideration only of facts which were in existence at the time of trial, not opinions, which can be formulated at any time." *Swope*, 243 F.3d at 498; *see also Murray v. Solidarity of Labor Org. Int'l Union Benefit Fund*,

172 F.Supp.2d 1155, 1163 (N.D.Iowa 2001) (citing *Swope*). Musal is not entitled to relief under Rule 60(b)(2).

Relief under Rule 60(b)(6), which provides relief for "any other reason justifying relief from the operation of judgment," is appropriate given the present circumstances. Fed. R. Civ. Pro. 60(b)(6). "Rule 60(b)(6) authorizes relief from final judgments in extraordinary circumstances." *Kansas Pub. Employees Ret. Sys. v. Reimer & Koger Assoc., Inc.*, 194 F.3d 922, 925 (8th Cir.1999). The jury has found that the assessment amounts for the second and third quarters are erroneous and excessive and further determined that the actual assessment amounts are substantially less than that found by the IRS. An inherent unfairness to Musal would result, especially considering the joint and several nature of the penalty assessment liability, were he left unable to obtain relief. This case presents an extraordinary circumstance warranting Rule 60(b)(6) relief. "Rule 60(b) was intended to preserve the delicate balance between the sanctity of final judgments ... and the incessant command of a court's conscience that justice be done in light of all the facts." *Rosebud Sioux Tribe v. A & P Steel, Inc.*, 733 F.2d 509, 515 (8th Cir.1984) (quoting *Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 572, 577 (D.C.Cir.1980)) (quotations omitted). In the present case, justice dictates that Musal be relieved from liability for the IRS Certified Assessment amounts. Even in the absence of the relief afforded by Rule 60(b)(6), the Court would exercise its inherent power to provide relief to Musal in these extraordinary circumstances. This striking injustice that was not adequately discernible at the summary judgment stage, but became obvious on the trial record, must be corrected in this Court and at this time.

The Court grants Musal Rule 60(b)(6) relief only as to those portions of the May 6, 2004, and May 18, 2004, Orders which found that the Court could not conclude that relying on Access Air's own records was an unreasonable method for determining the corporation's tax debt or that Musal failed to carry his burden of establishing that the assessments made against him were erroneous. Musal is provided no relief from the remainder of those orders which found Musal a responsible person who acted willfully.

Musal requests that the Court refer this case to Magistrate Judge Bremer to confer with counsel to determine whether, in light of the jury verdict with respect to the second and third quarters, a settlement conference should be held concerning the amount due. The Court agrees.

The Court refers this matter to Magistrate Judge Celeste Bremer for a settlement conference. The Court will also set a dispositive motion deadline and set for trial the sole issue of the accuracy of the second, third, and fourth quarter penalty assessment amounts.

Finally, Musal requests that the Court amend the jury's findings to reduce the penalty assessment amounts by the payments that have already been made by Miller, Ferguson, and Musal, and to clarify that the amount of the assessment for the second and third quarter bears interest at the statutory rate from January 7, 2002, the date of the IRS penalty assessment against both Ferguson and Musal.

The Court will not reduce the judgment amount by any payments already made by Musal, Ferguson, or Miller. The IRS transaction report that Musal offers in support of this request does not indicate who made the personal credit payments. Further, the United States is entitled to a judgment in the entire amount of the penalty; to reduce such judgment amount would jeopardize the Government's ability to collect the full penalty amount. *See Schultz v. United States*, 918

F.2d 164, 167 (Fed.Cir.1990) (decreasing penalty by the amounts assessed against other partners could jeopardize the government's right to demand full payment against the other partners). The Government is obligated to credit any payments received toward the judgment against Musal.

■ "[I]nterest on an 'assessable penalty' like the one established by section 6672 is payable only 'for the period from the date of the notice and demand to the date of payment.'" *Purcell v. United States*, 1 F.3d 932, 942 (9th Cir.1993) (quoting 26 U.S.C. § 6601(e)(2)(A)). Thus, the critical date for the purpose of calculating interest is the date of the notice and demand for payment from the IRS, that is, the date of the assessment. *Matter of Bugge*, 99 F.3d 740, 746 (5th Cir.1996) (taxpayer liable for statutory interest from the date assessed). The IRS assessed its penalty against Musal on January 7, 2002; therefore, any assessment amount he is ultimately found liable for would bear interest at the statutory rate from that date.

## CONCLUSION

Having duly considered the matters raised in the pending motions, the Court makes the following orders:

1. Miller's Motion for Litigation Costs [Clerk's No. 157] is **granted**.

2. Ferguson's Motion for Attorney Fees and Litigation Costs [Clerk's No. 170] is **denied**.

3. Ferguson's Motion to Modify Judgment [Clerk's No. 163] is **denied**.

4. The Government's Renewed Motion for Judgment as a Matter of Law [Clerk's No. 164] is **denied**.

5. Musal's Motion to Reconsider [Clerk's No. 161] is **granted**; Musal is granted relief under Fed. R. Civ. Pro. 60(b)(6) only with respect to the amount of the penalty assessments.

6. The matter is referred to Magistrate Judge Celeste Bremer for the scheduling of a settlement conference.

7. Judge Bremer will also conduct a Scheduling Conference to set a dispositive motion deadline and trial date solely on the issue of the penalty assessment amounts for the second, third, and fourth quarter.

8. Finally, when a final judgment is entered against Musal, it will reflect that any assessment amount is subject to interest at the statutory rate from January 7, 2002, the date of the assessment.

**IT IS SO ORDERED.**